WILLIAM N. ECKERSON, Appellant. *v.* SCHUYLER G. CRIPPEN, Respondent.

In 1837, D., who was owner of certain lands, upon which was a spring, agreed orally with J. that the latter, in consideration of $10 to be paid by him, might take water from said spring to his house sufficient for domestic purposes. J. laid a pipe from the spring to his house. I., who contemplated building a house on premises owned by him, entered into an oral agreement with J., by which the latter agreed to let him have part of the water from the spring, he agreeing to pay the $10 to D., and to pay part of the expense of furnishing and laying the pipe: In 1839 D. sold and conveyed to I. a piece of land with the privilege of taking water from the spring "sufficient to fill a three-fourth inch hole;" a pipe of that size would take all the water from the spring. I. built a house on the land so purchased and laid a pipe therefrom, connecting with that laid by J., through which he took the water from the spring. J., however, and his grantees continued to take, through the pipe so laid by him, sufficient of the water for domestic purposes at his house under a claim of right down to 1880, when defendant, who was then the owner of the I. premises, severed the pipe below the point where that leading to his house was connected with it, and so cut off the water from the J. house which was then owned by plaintiff. In an action to restrain interference with plaintiff's use of the water, *held*, that the oral agreement between D. and J. was merely a license which was revoked by the conveyance to I.; but that the subsequent open and notorious use by J. of the water under a claim of right inaugurated an adverse user, and such user having been continuous for over twenty years and having been acquiesced in by I. and his grantees, in the absence of any explanation, gave to plaintiff a right to its continuance; and, therefore, that plaintiff was entitled to the relief sought.

(Argued June 18, 1888; decided October 26, 1888.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made January 23, 1886, which reversed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to restrain an alleged interference with a pipe conducting water from a spring to plaintiff's dwelling-house and to recover damages for severing said pipe and depriving plaintiff of the use of the water.

The referee found, substantially, the following facts.

In the year 1837 an oral agreement was made between said John Caryl, who then owned a lot in Otsego county, on which was a dwelling-house known as the " mill-house," now owned and occupied as a dwelling by the plaintiff and one Daniel Crippen by the terms of which, in consideration of $10 agreed to be paid by Caryl to Crippen, the latter gave to Caryl the privilege to take, from a spring on Crippen's land, adjoining Caryl's land on the north-east, a quantity of water, sufficient for all domestic purposes, through pipe to the mill-house. Caryl, in pursuance of said agreement, bought lead pipe, entered upon the lands of Crippen, dug a ditch from the spring to the mill-house and laid the pipe therein, through which he took water running from the spring. After Caryl commenced to dig said ditch, and before the same was completed, Isaac La Moure, who contemplated building a dwelling-house on lands next west of and adjoining Caryl's, applied to the latter for a portion of said water to be used at his house, when built, and it was then orally agreed between Caryl and La Moure, that the latter should have a part of the water from said spring, he agreeing to pay Crippen the $10 Caryl had agreed to pay, and to contribute towards the expense of the ditch and pipe. For the purpose of carrying out the said arrangement Caryl ran the ditch further west than he had previously intended, and on higher ground, to a certain point, and from there down to his house. The water drawn through said pipe from the spring has been used continuously at said mill-house, for domestic purposes, from the year 1837 to July, 1880, and the quantity of water so received has been

sufficient for all domestic purposes at said house. On the 20th day of August, 1839, said Isaac La Moure purchased of said Daniel Crippen about one-third of an acre of land next west of and adjoining Caryl's land, together with the privilege of bringing water from said spring, which privilege is in the following words in the deed of conveyance from Crippen and wife : "Also, the parties of the first part do sell unto the party of the second, his heirs or assigns, the privilege of bringing water from a certain spring about fifty rods north-east from said lot, sufficient to fill a three-fourth inch hole, for the sum of $10, lawful money of the United States to them in hand paid." In 1839 said La Moure built a dwelling-house, known as the La Moure house, on the premises so purchased by him ; and in 1840 continued the pipe laid by Caryl, and thereby conducted a portion of said water into his house, where the same has ever since ran and been used for domestic purposes. By and through a number of mesne conveyances, the defendant has become and is the owner of the La Moure house and lot, and has succeeded to and owns all the rights which Isaac La Moure had in said water. George Wilson owned and occupied the La Moure premises from 1850 to 1863, and during said time, by consent of Caryl, fenced in a portion of the land of Caryl, covering the point of intersection, in said pipe, and joined said piece of land to his own, and such piece has ever since been occupied as a part of the La Moure lot. When the water was first introduced into the mill-house, no check or plug was used in the end of the pipe to restrain the flow of water. The point of discharge, at the mill-house, was, and is, eight feet eight and one-half inches lower than the point of discharge at the La Moure house. After the water was introduced at the La Moure house, it was necessary to place and keep a check or plug in the end of the pipe at the mill-house to make a portion of the water run to the La Moure house, and a wooden plug with a nick cut in one side of it was placed in said pipe at the mill-house, and kept there with the consent of the owners of the two

houses. At different times from the time the water so commenced running at both houses down to July, 1880, if the water stopped running at the La Moure house, or ran in less quantity than usual, the plugs and other checks at the mill-house were repaired, changed or replaced by the owners of the La Moure house, including the defendant, for the purpose of keeping a portion of the water flowing at the La Moure house, but never with the effect or for the purpose or with the intention of shutting off the usual supply of water at the mill-house. A three-fourth inch pipe would draw all the water of the spring to the La Moure house. There is, and at all times since said pipe was laid has been, sufficient water flowing therein from said spring to supply both of said houses with water enough for all domestic purposes. The use of the said water in a quantity sufficient for all domestic purposes at the mill-house has been open, notorious, visible, under claim or right adverse and continuous for forty years by Caryl and his grantees and successors in title, including the plaintiff, down to July, 1880, as against the defendant and all former owners of the La Moure house and all other persons, and the right of Caryl and his grantees and successors in title to the use of the water from said spring, as aforesaid, has been acquiesced in by said La Moure and his grantees and successors in title for the period specified. In July, 1880, the defendant, with the intent to deprive the plaintiff of the use of any of said water, cut the pipe leading from said spring, at a point a little above the intersection of the pipe leading to the respective houses, and also the portion leading to his own house at a point a little below the said junction, and then by a new piece of pipe joined the two ends, thus making a continuous pipe from said spring to the house of the defendant, and discontinuing the portion of the pipe leading to the plaintiff's house from said spring, and entirely shutting off the water flowing to the plaintiff's house and premises and depriving him of such water, and refused to allow the plaintiff to reattach his said pipe.

Further facts appear in the opinion.

*James A. Lynes* for appellant. The law gives a natural construction to the conduct of the parties to a conveyance, and after a long succession of years presumes that the person enjoying an easement, having no right to enjoy it unless under the grant of the true owner, had such a grant, and in consequence of it had never been molested in his enjoyment. (*Tinkham* v. *Arnold*, 3 Me. 123 ; 6 At. Rep. 8.) The defendant is estopped from denying the right of plaintiff to the water by the acts of La Moure, his grantor. (*Brown* v. *Bowen*, 30 N. Y. 519, 541; 18 id. 392.) The court will enforce the parole contract between La Moure and Caryl, being a complete and sufficient contract founded upon a valuable consideration, with terms defined and being accompanied by acts of part performance on the part of both parties. (*Ringe* v. *Baker*, 57 N. Y. 209; *Wheeler* v. *Reynolds*, 66 id. 227; *Weiseman* v. *Lucksinger*, 84 id. 31; *Freeman* v. *Freeman*, 43 id. 34; *Laning* v. *Law*, 3 Barb. Ch. 407.) The General Term had no right to assume a consent or permission to Caryl to take water from the spring without evidence, as it was for the party submitting to the user in such a case to show that it was by license or permission. (*Hammond* v. *Zehner*, 21 N. Y. 118; *Warren* v. *Ward*, 82 id. 265 ; *Law* v. *McDonald*, 9 Hun, 23 ; *Dorrity* v. *Dunning*, 6 At. Rep. 3.) The water and the pipes were an appurtenance to the premises and necessary for the full enjoyment of them, and were open and visible to the purchaser and passed by each conveyance to the purchaser. (*Parsons* v. *Garner*, 5 Hun, 112; 11 Week. Dig. 432; *Voorhees* v. *Burchard*, 55 N. Y. 98; *Adams* v. *Conover*, 22 Hun, 424; *Simmons* v. *Cloonan*, 81 N. Y. 557.) The opinion of a grantor that his deed does not give a right to use an appurtenant to the premises conveyed cannot affect the rights of a subsequent grantee who has bought with a right to rely, and relying upon his grantor's title. (5 Serg. & Rawle, 107; *Voorhees* v. *Burchard*, 55 N. Y. 98, 104.) The objections to evidence were too general if well founded. They should have been to specific questions and the precise ground of objection pointed out to the court. (*Vilmar* v. *Schall*, 61 N. Y. 564;

*Com. Bk. of Penn.* v. *Union Bk. of N. Y.*, 11 id. 203; *Champney* v. *Blanchard*, 39 id. 111; *Baker* v. *Spencer*, 47 id. 562; *Fassin* v. *Hubbard*, 55 id. 465; *Newton* v. *Porter*, 69 id. 133.) The declarations of John Caryl while in possession of the premises are competent to characterize his possession. (*Edmeston* v. *Edmeston*, 13 Hun, 133, 137; *Swettenham* v. *Leary*, 18 id. 284, 286; *Smith* v. *McNamara*, 4 Lans. 169; *Abeel* v. *Van Gelder*, 36 N. Y. 513; *Moore* v. *Hamilton*, 44 id. 666; *Morss* v. *Salisbury*, 48 id. 636; *Jackson* v. *Van Buren*, 5 Johns. 144, 157.) The difference in the rental value of the premises, with the water running and without it, with interest on that sum from the time the action was commenced, is the true rule of damages in this case. (*Francis* v. *Schoellkopf*, 53 N. Y. 152; *Chipman* v. *Palmer*, 9 Hun, 517; *Weil* v. *Stewart*, 19 id. 272; *Jutte* v. *Hughes*, 67 N. Y. 267; *Mailler* v. *Express Propeller Line*, 61 N. Y. 312, 316; *Worrall* v. *Munn*, 38 id. 151; *Whitehall Trans. Co.* v. *N. J. Steamboat Co.*, 51 id. 369.)

*F. L. Smith* for respondent. A party cannot prove the doing of an act by proving his declaration that he had done it. (*Weeks* v. *Lowrie*, 8 Barb. 530, 535; *Reed* v. *N. Y. C. R. R. Co.*, 45 N. Y. 577; *Jackson* v. *McVey*, 15 Johns. 234; *Stickney* v. *Billings*, 30 Hun, 304; *Erben* v. *Lorrillard*, 19 N. Y. 299; Abbot's Trial Ev. 158, 710, 711; Greenl. on Ev. § 147; *Crosby* v. *Lary*, 6 Bosw. 313; *Isles* v. *Tucker*, 5 Duer, 399; *Tuttle* v. *Hunt*, 2 Cow. 436; *Penfield* v. *Carpender*, 13 Johns. 350.) Where evidence which may have been deemed unimportant by the referee bears upon a controverted question, it cannot be said that it did not influence the decision. (*Chadwick* v. *Fonner*, 69 N. Y. 404–408.) There is no distinction between actions of a legal and those of an equitable nature, in respect to the availability of exceptions taken upon the trial, upon the admission of incompetent evidence. (*Foote* v. *Beecher*, 78 N. Y. 155–157.) When illegal evidence is admitted which bears in the least degree on the result it is fatal. (*Beard* v. *Gillett*, 47 N. Y. 188; *Osgood* v. *Man-*

*hattan Co.*, 3 Cow. 612; *Worrall* v. *Parmalee*, 1 Comst. 519;
*Starbird* v. *Barrows*, 43 N. Y. 200; *Neudecker* v. *Kohlberg*,
81 id. 304, 305; *Hutchins* v. *Hutchins*, 98 id. 65; *Bennett* v.
*McGuire*, 58 Barb. 625–637; *Coleman* v. *People, etc.*, 58
N. Y. 555–562; *Anderson* v. *Rome, W. & O. R. R. Co.*,
54 id. 334; *Havemeyer* v. *Havemeyer*, 11 J. & S. 506–522.)
Objection may be taken on the trial " to the competency of
the witnesses or the admissibility of their testimony," although
no motion has been made to suppress the deposition for
irregular or defective execution. (*Union Bank* v. *Torrey*,
5 Duer, 628.) That parole agreement amounted, at the most,
to no more than a parole license, revocable at will, and con-
ferred no right upon Caryl or his grantees. (*Wiseman* v.
*Lucksinger*, 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323;
*Wood* v. *Leadbetter*, 13 M. & W. 838; ll *hite* v. *Spencer*, 14
N. Y. 249; *St. Vincent Orphan Asylum* v. *City of Troy*, 76
id. 108; *Selden* v. *D. & H. C. Co.*; 29 id. 639; *Pratt* v. *Ogden*,
34 id. 23; *Pierrepont* v. *Barnard*, 6 id. 279; *People* v.
*Fields*, 1 Lans. 245; *Sweeney* v. *St. John*, 28 Hun, 634;
2 Bingham on Real Prop., 58–100; 1 Add. on Torts,
129, 130, 131.) No length of use exercised under a
license from the owner of the estate will ripen into a right.
(*Flora* v. *Carbean*, 38 N. Y. 116; 1 Add. on Torts, 173, note;
*Wiseman* v. *Lucksinger*, 84 N. Y. 31.) An easement does
not pass under the word " appurtenances " in a deed unless
the grantor is, in fact, the legal owner of that which is claimed
to pass as an easement. (*Green* v. *Collins*, 86 N. Y. 250;
*Stuttmacher* v. *Selina, etc., Co.*, 34 How. 74, 81; Baylies'
Trial Practice, 292.) Caryl could not have had specific per-
formance as against Daniel Crippen. (*Cronkhite* v. *Cronkhite*,
94 N. Y. 323.)

PECKHAM, J. The parol agreement between Caryl and
Daniel Crippen, made in 1837, for the use of water from the
spring belonging to Crippen, although founded upon a con-
sideration, was nothing more than a license. We cannot see
any material distinction between this case in that respect and

those of *Wiseman* v. *Lucksinger* (84 N. Y. 31), and *Cronkhite* v. *Cronkhite* (94 id. 323). In the former case the parol agreement was quite as specific in its terms as the one here proved, and yet it was held not sufficiently complete and definite to be regarded in equity as equivalent to a grant by deed or conveyance, in writing, as required by the common law and by our statute. The grant, by deed, of Daniel Crippen to La Moure, of the privilege to bring water from the spring sufficient to fill a three-fourths inch pipe, although not, in terms, a revocation of the license to Caryl to take water from the same spring sufficient for all domestic purposes, yet taken in connection with the fact found by the referee that a three-fourths inch pipe would draw all the water there was from the spring, the grant, above mentioned, can be regarded in no other light than as a revocation of such license to Caryl. Notwithstanding this revocation the fact is that Caryl asserted and claimed the right to and did take water continuously from such spring sufficient in amount for his domestic purposes, and he and his grantees have actually continued this use and under this claim of right for over forty years, and down to the year 1880, when the trouble culminating in this lawsuit commenced. This use has been submitted to and acquiesced in by La Moure and his grantees for that length of time. After the revocation of the license to Caryl by Crippen became known to Caryl, his further use of the water, open, notorious and under a claim of right, as well against Crippen as all others, would inaugurate an adverse user as against the world. As there was only water enough to fill one pipe of three-quarter inch size, every drop taken by Caryl under his claim of right was a direct adverse user of that quantity of water belonging to La Moure under his conveyance above mentioned.

It is true that La Moure and Caryl used the same pipe in conducting the water from the spring, and that Caryl tapped it at a proper place on his own land in which to insert a branch and lead the water to his house. Whether the use was by means of the same or a different pipe is of no importance. It was under a claim of right, and it is the use and not the

means by which the use was obtained that is material, and the finding of the referee is, that it was notorious, visible and under a claim of right, adverse and continuous as against defendant and all his grantors for forty years. The pipe to conduct the water was procured and furnished by Caryl, and its use by Caryl was some years prior in point of time to the conveyance by Crippen to La Moure, and the pipe which brought the water down to a point on the lands of Caryl, where it could then be conducted by a branch, was simply lengthened so as to enable La Moure to get the water to his house, and the use thus inaugurated by Caryl was kept up by him and his grantees, as has. been said, for more than forty years under this claim of right, and of a nature adverse to La Moure and his grantees. There was no explanation found by the referee on the part of La Moure showing, or tending to show, that this user by Caryl was by virtue of any license from him (La Moure), and the acquiescence in such use by him and his grantees for forty years shows a recognition on their part of the right of Caryl as exercised and claimed by him.

This user was injurious to the property of La Moure in the water from the spring, because the size of the pipe which he was authorized to use in order to conduct the water would take all the water from the spring, and hence every particle thereof taken under a claim of right adverse to La Moure by any one else was an invasion to that extent of the rights of La Moure. Such a continued use of the water for more than twenty years, unexplained, gives a right to its continuance. (*Hammond* v. *Zehner*, 21 N. Y. 118.) No such explanation is found to exist.

This adverse user, so long acquiesced in by those against whom it was claimed, and whose property in the water was thus and thereby injuriously affected, makes out a complete defense to the claim of La Moure and his grantees as now made to the sole and exclusive property in the whole water under the deed to La Moure. And this conclusion seems to us to be more consistent with the justice of the case than if, after

so long an acquiescence in this adverse user, the right to take all the water should be found to still remain in La Moure or his grantees to the entire exclusion of the grantees of Caryl.

Upon the findings of the referee the plaintiff has made out his cause of action, and the further question arises whether there is any evidence which supports the finding as to the use of the water by Caryl and his grantees under the claim of right and adverse to all the world.

On looking through the record it is apparent that there is evidence of that nature and quite enough to support such finding, and that is conclusive upon us on this appeal.

The learned counsel for the respondent, in order to still maintain the correctness of the reversal of the judgment by the General Term, even if it were wrong on the main question, has called our attention to two or three alleged errors in the admission of evidence by the referee, which, as is claimed, called, in any event, for such reversal.

We have carefully looked through all the evidence and are of the opinion that even if the errors be conceded they could not have affected the result at which the referee arrived. The defendant criticises the judgment as entered, because he says it deprives him of all right to control the water in any way so as to reserve to him what is undoubtedly his, viz., all the water excepting such an amount as is sufficient for plaintiff for domestic purposes. But we think the criticism not well founded. He would have the same right which he has hitherto exercised of so regulating the flow of the water to the plaintiff that he should get no more than he has been accustomed to have, and which was sufficient for his domestic purposes, and all the balance belongs to defendant and must go to him, and he would have and has the right to see to it that he does so get it.

The order of the General Term granting a new trial must, therefore, be reversed and the judgment entered upon the report of the referee affirmed, with costs to the plaintiff.

All concur, except ANDREWS, J., dissenting.

Ordered accordingly.