TONEY v. KNAPP.

LICENSES—REVOCATION—OPERATION OF LAW—TRANSFER OF SERVIENT ESTATE—EASEMENTS—ADVERSE POSSESSION.

In this case, involving the existence of a private right of way, which had its origin in a personal license, and which defendant claims by prescription because of adverse user for more. than the statutory period after transfer of the title of the servient estate by the original licensor, Mr. Justice GRANT, with whom concur Justices BLAIR and OSTRANDER, writes for reversal, on the ground that the finding of the trial judge that the user was adverse after the transfer, was based solely upon the revocation of the license by the transfer, and the unauthorized presumption that the plaintiff's grantors knew the legal effect of the transfer upon the license; Mr. Justice MONTGOMERY writes for affirmance upon the ground that the transfer of the title operated to revoke the license and make further use of the right of way adverse, there being no presumption that the parties did not know their rights; and Mr. Chief Justice CARPENTER, with whom concur Justices MOORE, MCALVAY, and HOOKER, writes for affirmance on the ground that the finding of the trial judge on the fact of adverse user is conclusive upon this court, and that the plaintiff's intermediate grantors, on taking the title from the original licensor, were bound by the law to ascertain the fact and character of defendant's possession.

Error to Berrien; Coolidge, J.   Submitted January 20, 1905.   (Docket No. 95.)   Decided January 24, 1906.

Trespass quare clausum fregit by George Toney against Fred Knapp.   There was judgment for defendant, and plaintiff brings error.   Affirmed.

This case was tried before the court without a jury, and the following finding of facts and law made:

" In 1859 Wright Buzzard owned 80 acres in section 26, Berrien township.   William P. Weed then owned 91 acres directly west of said 80 acres.   Buzzard had no means of going from his farm to the public highway, running north and south on west side of Weed's land; and on March 3, 1859, he obtained a written license from Weed, by which the latter granted to Buzzard the right to use the south 20 feet of said 91 acres as a private road, leading from the Buzzard farm to the public highway.   A few years later a public highway was built on the north side of the Buzzard and Weed farms, which connected with the north and south road mentioned above.

" Buzzard and his successors and grantees used said 20-foot strip as a private way from the Buzzard farm to the public highway continuously from 1859 to 1895.

" The plaintiff is the owner of the east 31 acres of said 91 acres, and derives his title from William P. Weed.   Mrs. Sarah Knapp, the mother of defendant, became the owner of the Buzzard farm of 80 acres in 1872, and derived her title from said Buzzard through his grantees.

" Weed, the owner of the 91 acres over which the private way runs, died some time prior to 1876, and in that year his heirs conveyed the land to plaintiff's grantor. The plaintiff has title to the east 31 acres of said 91-acre piece.

" In 1864 Buzzard conveyed his farm of 80 acres to one Tuttle, and from that time to 1895 Tuttle and his successors and grantees were in possession of said private way. This road appears to have been used openly, continuously, and exclusively by the said Buzzard and his successors and grantees from 1859 to 1895.   The following concession is made:

" ' It is also conceded that Wright Buzzard and his grantees had possession, open, visible, and under claim of right, of the premises

in dispute continuously until the highway was laid in 1884, and that they used it some from that time up to the time the fence was built in 1895, but did not use it as much as they did previous to 1884.'

"Sarah Knapp became the owner of the Buzzard farm in 1872 as a successor of Buzzard, and has since owned it.

"In 1895 the plaintiff, being the owner of the 31 acres referred to, closed up said right of way by building a fence across the same, and also built a fence along his south line inclosing said right of way with his land. Kingsley Knapp, acting for Sarah Knapp, shortly thereafter tore down such fence across the right of way. Toney then sued Kingsley Knapp in an action of trespass, which is still pending in this court. The fence was rebuilt by plaintiff in 1895, and the right of way was not used afterwards by defendant, or those under whom he acted. The plaintiff maintained the fence, and was in the continuous, open, and visible peaceable possession of the land in question under color and claim of right, hostile to defendant and the parties under whom he held, and grubbed out the so-called right of way and raised crops on it, and was in such peaceable possession as aforesaid, from 1895 till the time of the alleged trespass in the spring of 1903, when defendant tore down the fence running east and west on the south line of plaintiff's land, inclosing said right of way with his lands.

"In the spring of 1903 the defendant, acting for Sarah Knapp, tore down the fence and removed it to the land of plaintiff. This is the act of trespass alleged by the plaintiff and for which suit is brought.

"I find the following conclusions of law:

"1. I find that the writing of March 3, 1859, entered into between Weed and Buzzard, was a personal license, and conveyed no rights running with the land.

, "2. I find that such license became revocable by the death of Weed, and that consequently it was revoked as early as 1876.

"3. I find that such license became revocable by the conveyance of Buzzard to Tuttle in 1864, and that Tuttle acquired no right to use said right of way by such deed.

"4. I find that the use and possession of the private way from 1872 to 1895 by Sarah Knapp was open, visible, continuous, and adverse; that such possession was under a claim of right at least from the time of Weed's death in 1876; and that, having continued for more than 15 years,

the right to use such private way became vested in Sarah Knapp by prescription.

" 5. I find that the possession of said Sarah Knapp was not permissive, but hostile, under a claim of right, and that no written or express notice was necessary from Mrs. Knapp to the plaintiff or his grantors of such claim, as the plaintiff and his grantors must have known the character of her possession and acquiesced in it.

" 6. I find, therefore, that the defendant is not guilty of the trespass alleged in plaintiff's declaration, and judgment is therefore rendered in favor of defendant and against the plaintiff for his costs of suit, to be taxed."

*Coy W. Hendryx,* for appellant.

*Charles E. White,* for appellee.

GRANT, J. (*after stating the facts*). The requisites of an adverse possession sufficient to transfer the title to land from one to another are well understood. The facts found must clearly show a use nonpermissive and directly, openly, and notoriously hostile to the rights and possession of the original owner. Buzzard in 1859 obtained a license to pass over the land of Weed. It was revocable by notice or by operation of law. No notice was ever given. It is contended that the license was revoked by operation of law. Defendant contends that at the moment of revocation the continued use of the right of way by the licensee became open, hostile, and notorious, although no notice was given by the licensee, or act or word said to indicate to the licensor that the licensee intended to at once convert a permissive use into a notoriously hostile one. While everybody is presumed to know the law, it is not to be presumed that revocation by operation of law ipso facto transforms at once a permissive and rightful possession into a hostile one which may ripen into a title.

"A manifest intention to oust the real owner must clearly appear in order to raise an act, which may be only a trespass, to the bad eminence of a disseisin." 4 Kent's Commentaries, p. 487.

"A disseisin is when one enters, intending to usurp the possession and to oust another of the freehold. Therefore

'quærendum est a judice quo animo' he entered." 1
Greenleaf's Cruise on Real Property, p. 51.

While it is true that the license was revoked by opera-
tion of law, it is also true that there is nothing in the find-
ing of facts to justify the conclusion that either party sup-
posed or understood that he was doing any more than con-
tinuing the use under the license. The transfer of title
by the licensor, or his death, of course, operates in law as
a revocation of the license. Probably few laymen in fact
know this to be the law. If the licensee and the grantees
of the licensor, or his heirs in case of death, supposed that
the licensee was using the land under his license, and he
made no other claim, can it be that such use and occu-
pancy instantly became hostile, so that the licensee by
such user acquired title by adverse possession? This
court said, in *Eyer* v. *Beck*, 70 Mich. 179, 181, that ab-
struse rules "are often not much known to even the legal
fraternity who have not had their attention called to them,
and the unprofessional world is not familiar with law
books."

The maxim that "every one is presumed to know the
law" applies to one's acts which the law has made crim-
inal, and to one's liability upon his contract. It does not
apply to cases where actual knowledge must be found as
a fact. This court said, in *Black* v. *Ward*, 27 Mich. 191,
at page 200:

"No man can avoid a liability, as a general thing, be-
cause he is ignorant of the law. This is an essential rule
of society. But the law is not so senseless as to make
absurd presumptions of fact. In *Reg.* v. *Mayor of
Tewksbury*, L. R. 3. Q. B. 628, this supposed maxim was
very clearly explained, and it was held that, where an
actual knowledge was in question, the legal presumption
could not supply it. Blackburn, J., uses this language:

"'From the knowledge of the fact that Blizzard was mayor and
returning officer, was every elector bound to know, as matter of
law, that he was disqualified? I agree that ignorance of the law
does not excuse. But I think that in *Martindale* v. *Falkner*, 2 C.
B. 719, Maule, J., correctly explains the rule of law. He says:

" ' " There is no presumption in this country that every person knows the law. It would be contrary to common sense and reason, if it were so."

" ' In *Jones* v. *Randall,* 1 Cowp. 38, 40, Dunning, arguendo, says:

" ' " The laws of this country are clear, evident, and certain. All the judges know the laws, and, knowing them, administer justice with uprightness and integrity."

" ' But Lord Mansfield, in delivering the judgment of the court, says:

" ' " As to the certainty of the law mentioned by Mr. Dunning, it would be very hard upon the profession if the law was so certain that everybody knew it. The misfortune is that it is so uncertain that it costs much money to know what it is even in the last resort." ' "

In *Reg.* v. *Mayor of Tewksbury,* L. R. 3 Q. B. 628, B. was the mayor and was a candidate for re-election, and presided at the election. He was disqualified for election, on the ground that he, a returning officer, could not return himself. He had a majority of the votes. The claim was that the votes cast for him were absolutely void, as if they had been cast for a dead man, or with knowledge on the part of the voters that he was disqualified, and therefore the one having the next highest number of votes was elected. The court held that, while the voters were presumed to know that B. was mayor and returning officer, there was no presumption of knowledge that he was disqualified in point of law, and therefore the votes cast for him were not thrown away, so as to make the election fall on another candidate.

The defendant, in order to maintain his title, must prove that his possession was intentionally hostile to the title of the plaintiff, and his act of possession on which he relies must have been so open and notorious as to show knowledge in the plaintiff. Defendant's claim rests entirely upon the presumption that he had in fact changed a permissive and rightful possession into a wrongful and hostile one, and that plaintiff knew of the change, when in fact there is nothing to indicate that either party even supposed that there was any change in the original conditions under which the defendant and his grantors had oc-

cupied the property. The presumption that every one knows the law cannot, in my judgment, be held to convert a permissive and rightful use into a wrongful and hostile one, without some act to indicate that the parties understand the changed conditions and their consequences, and either do or say something to clearly indicate a hostile intent. It does not appear that Buzzard or any of his grantees ever inclosed this right of way. If they did not, it was a part of the close of Mr. Weed and his grantees, who had no occasion to use the passageway. Only Buzzard and his grantees had occasion to use that. Therefore their use was open, continuous, and exclusive, but no more so after the death of Weed than before. Under such circumstances, we think it clear that there was no adverse possession, such as the law requires. *President, etc., of Worcester Bank* v. *Insurance Co.*, 11 Cush. (Mass.) 265; *Smith* v. *Hitchcock*, 38 Neb. 104; *Ann Arbor Fruit & Vinegar Co.* v. *Railroad Co.*, 136 Mich. 599 (66 L. R. A. 431); *Hill* v. *Hagaman*, 84 Ind. 287; 1 Cyc. pp. 1026-1030; *City of St. Joseph* v. *Seel*, 122 Mich. 70.

The defendant cites and relies mainly upon *Eckerson* v. *Crippen*, 110 N. Y. 585 (1 L. R. A. 487). The facts in that case are that one Caryl in 1837 obtained from one Crippen, in consideration of $10, the privilege to take water from a spring on Crippen's land sufficient for all domestic purposes through a pipe to Caryl's house. Caryl entered upon Crippen's land, dug a ditch, and laid his pipe, through which he took the water from the spring. Before the ditch was completed one La Moure, who contemplated building a dwelling house on land next to Caryl, agreed with Caryl for a part of the water, on agreeing to pay Crippen the $10 Caryl had agreed to pay, and to contribute towards the ditch and the pipe; but it does not appear that this agreement was carried out. Caryl and his grantees continuously used water from the spring for domestic purposes from 1837 to July, 1880. On August 20, 1839, La Moure purchased from Crippen one-third of an acre of land adjoining Caryl's. The deed con-

veyed to La Moure the right to bring water from this spring sufficient to fill a three-quarter inch pipe. La Moure built his house, and in 1840 continued the pipe, laid by Caryl, into his (La Moure's) house, where the same ever thereafter ran and was used for domestic purposes.   The defendant was the owner of the La Moure house, and succeeded to all the rights which La Moure had in the water.   Without entering further into the facts found by the referee, which are somewhat lengthy, the referee found that the use of the water by Caryl and his grantees had been open, notorious, visible, and under a claim of right, adverse and continuous for 40 years, as against the defendant and all former owners of the La Moure house, and that such right had been acquiesced in by La Moure and his grantees for that period.   The court in its opinion said :

" There was no explanation found by the referee on the part of La Moure showing, or tending to show, that this user by Caryl was by virtue of any license from him (La Moure ), and the acquiescence in such use by him and his grantees for 40 years shows a recognition on their part of the right of Caryl as exercised and claimed by him.   This user was injurious to the property of La Moure in the water from the spring, because the size of the pipe which he was authorized to use in order to conduct the water would take all the water from the spring, and hence every particle thereof taken under a claim of right adverse to La Moure by any one else was an invasion to that extent of the rights of La Moure.  Such a continued use of the water for more than 20 years, unexplained, gives a right to its continuance.   No such explanation is found to exist. This adverse user, so long acquiesced in by those against whom it was claimed, and whose property in the water was thus and thereby injuriously affected, makes out a complete defense to the claim of La Moure and his grantees as now made to the sole and exclusive property in the whole water under the deed to La Moure.   And this conclusion seems to us to be more consistent with the justice of the case than if, after so long an acquiescence in this adverse user, the right to take all the water should be found to still remain in La Moure or his grantees to the entire exclusion of the grantees of Caryl."

The court further found that the revocation of the license to Caryl by Crippen became known to Caryl, and that thereafter the open, notorious use of the water, under a claim of right, as well against Crippen as all others, would inaugurate an adverse user as against the world. The decision of the court is based upon the fact, as found by the referee, that the use of the water by Caryl and his grantees had been "open, notorious, visible, under claim of right, adverse, and continuous for 40 years." The relation of licensor and licensee never existed between Caryl and La Moure. La Moure did not claim any right to use this water by virtue of his arrangement with Caryl, but by virtue of his deed from Crippen. As between the plaintiff and defendant in that suit, therefore, there was no license to revoke, and consequently the question now before us was not, as between them, involved. The referee found as a fact from the evidence, which is not all reported, that Caryl's use and possession were adverse from the beginning. Where the facts are conceded or undisputed, adverse possession is a question of law for the court to determine. In this case the learned circuit judge did not find as a fact that the use was hostile and adverse, but found this as a matter of law from his finding of facts. If he had found as a fact that the use was hostile and adverse, without stating the evidence upon which the finding was based, that finding would be conclusive in this court. The sole finding upon this point is: "This road appears to have been used openly, continuously, and exclusively by the said Buzzard and his successors and grantees, from 1859 to 1895." Buzzard had the right under the license to use it openly, continuously, and exclusively, and, as above stated, there is no fact to indicate any element of hostility in such use to the plaintiff's title. I do not think the findings of fact justify the conclusion of law that defendant's use was hostile and adverse to the plaintiff's title.

Judgment should be reversed, and entered in this court for the plaintiff for 6 cents damages and costs.

BLAIR and OSTRANDER, JJ., concurred with GRANT, J.

MONTGOMERY, J.   The facts as found by the circuit judge are set out in full in the opinion of Mr. Justice GRANT.   Under this finding, the question presented seems to be this : Where one enters upon land of another under a license, may such licensee set up a claim of title by adverse possession continued for the statutory period, after a revocation of the license by means of a conveyance by the licensor, without also showing distinct notice of an adverse claim to the owner of the servient estate.?   The contention made on behalf of the appellant is that the owner of such servient estate has the right to assume that the occupant is in possession in recognition of his title.   In my judgment, this contention does not take due account of the effect of the conveyance under which this plaintiff claims.   It is well settled that a conveyance of the land by the licensor operates ipso facto as a revocation of a license previously granted.   *Maxwell* v. *Bay City Bridge Co.*, 41 Mich. 467; *Minneapolis, etc., R. Co.* v. *Marble*, 112 Mich. 10; *Eckerson* v. *Crippen*, 110 N. Y. 585 (1 L. R. A. 487).   The plaintiff and his grantees, when they derived title immediately or mediately through grants by the licensor, took title to the land free from any license, and must, if they are to be presumed to know the law, have known that any occupancy by defendant and his grantors was not in subserviency to plaintiff's title.   If the case were to depend upon notice of adverse claim to be implied by a transfer of the license by the licensee, the question presented might be somewhat more doubtful, as in such case an acceptance of a transfer of the license *as such* might imply a recognition of the title of the owner and of his right to terminate such supposed license at any future time by notice.   Not so in case of a transfer by the licensor.   Such transfer is, as we have seen, a revocation. The grantee knows thence that the licensee is occupying without right under the license, and that if he is (as in this case) occupying under a claim of right, his possession must be adverse to the true owner.

The case of *Eckerson* v. *Crippen*, supra, is, in its rea-

soning, quite instructive and quite in point. It is true the referee found, in that case, an adverse user by defendant as a fact, but it is manifest that he found such adverse user from the fact that the license had by the licensor been revoked to the knowledge of the licensee. In that case it was held that a transfer by deed of a right to take a quantity of water from a spring, which would constitute all that would flow therefrom, operated ipso facto to revoke a previous license to defendant to take a lesser quantity from the same spring. The court says:

"As there was only water enough to fill one pipe of three-quarter inch size, every drop taken by Caryl under his claim of right was a direct adverse user of that quantity of water belonging to La Moure under his conveyance."

It is suggested by Mr. Justice GRANT in his opinion that the relation of licensor and licensee never existed between Caryl and La Moure in that case. So in the present case the relation of licensor and licensee never existed between the plaintiff and his immediate grantors and the defendant and his grantors; but it is a mistake to say that the question before us was not there involved. In that case Crippen's license to Caryl was held revoked by Crippen's conveyance to La Moure. In the present case Weed's license to Buzzard was revoked by Weed's conveyance to Knapp.

But it is suggested that the parties might not know their legal rights, and that the rule that every one is presumed to know the law should be reversed in this case, and not only this, but an inference not founded upon any finding be drawn that the parties did *not* know the law, and are to be presumed to entertain a belief that the license still continued. Such speculation leads us far afield. If we are to speculate as to the probable belief of the parties, why may we not as readily believe that the defendant understood that he had a perpetual right as to believe that plaintiff's grantor understood that defendant

was occupying under a license which did not, in fact, exist.

It is contended that, even though the defendants had acquired title by adverse possession, they cannot defend against this action, because they invaded the plaintiff's possession. We agree with the circuit judge that one having title to property, and wrongfully denied possession, may enter if he can do so without committing a breach of the peace.

The judgment should be affirmed.

CARPENTER, C. J. I agree with my Brother MONTGOMERY that the judgment in this case should be affirmed. I base this conclusion, not on the ground that there is any legal presumption that laymen actually know the law, but on the ground that it is to be inferred from the findings of fact that Sarah Knapp, defendant's mother and employer, acquired a right by prescription to use this way. It appears from the finding of fact that Mrs. Knapp and her grantors used this way " openly and continuously and exclusively * * * from 1859 to 1895, * * * that Wright Buzzard [the original licensee] and his grantees had possession, open, visible, and under claim of right of the premises in dispute continuously until the highway was laid in 1884, and that they used it some from that time up to the time the fence was built in 1895." The finding that the way was used " under a claim of right" clearly implies to my mind that it was not used under the claim of the license, but, on the contrary, was used under a claim independent of the license. The proper construction of this finding, then, warrants the inference of a hostile user of the way for a period longer than is required to gain a prescriptive right.

My Brother GRANT argues that this construction of the finding is wrong, because the learned circuit judge who tried the case in the lower court based his conclusion " solely upon the revocation of the license by death and the transfer of title." I think it is a sufficient answer to

this argument to say that the circuit judge placed upon this finding the construction I place upon it. This is proved by the following quotation from his opinion:

"It seems to be conceded that possession was held of this way under a claim of right. It is difficult for me to see what is meant by this concession, except that Mrs. Knapp was really in possession from 1876 to 1895 under a claim of right in herself which amounted to adverse possession."

Neither does this construction impugn the intelligence of plaintiff's counsel. It is to be presumed that he conceded only what he knew could be easily proved. Counsel displayed intelligence as well as candor by making such a concession. After making it, he could still contend, and did contend, that, the user having originated in a license, the statute of limitations did not commence to run, because the owner of the servient tenement had no knowledge of a hostile user. This contention is answered by saying such knowledge was acquired by plaintiff's grantors, who, it appears from other findings, purchased the servient tenement in 1876 at a time when this way was continuously, exclusively, and adversely used. The law compelled these purchasers to acquire knowledge of the adverse claim of the user of the way. *Howatt* v. *Green*, 139 Mich. 289. The statute of limitations, therefore, commenced to run as early as 1876. A right by prescription was acquired long before the interruption of the user in 1895. Nothing has transpired since that time to defeat that right.

MOORE, MCALVAY, and HOOKER, JJ., concurred with CARPENTER, C. J.

GRANT, J. My Brother CARPENTER has written an opinion for affirmance, the reason for which he states as follows:

"It appears from the finding of fact that Mrs. Knapp and her grantors used this way 'openly and continuously and exclusively * * * from 1859 to 1895, * * *

that Wright Buzzard [the original licensee] and his gran-
tees had possession, open, visible, and under claim of right
of the premises in dispute continuously until the highway
was laid in 1884, and that they used it some from that
time up to the time the fence was built in 1895.' The
finding that the way was used 'under a claim of right'
clearly implies, to my mind, that it was not used under
the claim of the license, but, on the contrary, was used
under a claim independent of the license."

As I have already stated, the court below did not find
as a fact an adverse holding. He found it only as a con-
clusion of law from the facts found. A possession open,
continuous, and exclusive is not of itself hostile and ad-
verse, especially where the original entry and possession
are permissive. If I read the findings of law correctly,
the opinion of the learned circuit judge is based solely upon
the revocation of the license by death and the transfer of
title. The finding of fact by the judge makes no dis-
tinction between the possession of Buzzard and his gran-
tees. The finding reads:

"This road *appears* to have been used openly, continu-
ously, and exclusively by the said *Buzzard* and his suc-
cessors and grantees from 1859 to 1895."

The judge does not find as a fact that the possession of
Buzzard's grantees was any more open, continuous, or ex-
clusive than was the possession of Buzzard, or that it was
based upon any other right or claim of right. Certainly
Buzzard's possession was not hostile or adverse. There
is no finding that any grantee of Buzzard even supposed
that he was occupying the land upon any other claim or
right than that obtained and enjoyed by Buzzard.

The only other finding of fact upon this point is the con-
cession, made by counsel for the plaintiff at the trial, that
"Wright Buzzard and his grantees had possession, open,
visible, and under claim of right," etc. Counsel for plain-
tiff must be conceded to have the intelligence and common
sense of at least a layman. The possession and claim
thereunder conceded began with Wright Buzzard, and

clearly, in my opinion, can be construed to mean nothing more than that Buzzard's grantees continued apparently in the same possession and under the same claim that did Buzzard. Buzzard's possession was open, visible, and under claim of right, based solely upon the license. If the defendant and her grantors claimed possession based upon any other claim of right than that obtained by Buzzard, it was her duty to show it, unless we hold that death or transfer of title ipso facto changed a peaceful and permissive possession into a hostile and adverse one.

BLAIR and OSTRANDER, JJ., concurred with GRANT, J.