FIRST NATIONAL BANK OF BAY CITY *v.* VANDEN BROOKS.

1. LICENSES—PAROL LICENSE—REVOCATION BY DEED.

Where the owners of adjoining buildings built a stairway jointly, the middle of the stairway being upon the line, and by parol agreement one owner used the basement under the stairway, and the other the rooms over it, a parol license was created which was revoked by a deed by one of the owners.

2. EASEMENTS—ADVERSE POSSESSION—PRESCRIPTION.

Defendant's exclusive use of a stairway and rooms over it for more than 20 years after a parol license had been revoked, *held*, to create a prescriptive right to their use so long as the present building stands.

3. SAME—EXCLUSIVE USE—PRESCRIPTION.

Because persons other than defendant used said stairway, does not prevent his user from being exclusive, since exclusive use means that his right does not depend on a like right in others.

Appeal from Bay; Davis, J., presiding. Submitted October 24, 1918. (Docket No. 6.) Decided December 27, 1918. Reargued February 7, 1919. Opinion reaffirmed May 29, 1919 (see 206 Mich. 177).

Bill by the First National Bank of Bay City against John C. Vanden Brooks and others to quiet title to land. Defendant Vanden Brooks filed a cross-bill claiming title by adverse possession and prescription. From a decree for plaintiff, defendant Vanden Brooks appeals. Reversed, and decree entered for appellant.

*Edward S. Clark,* for plaintiff.

*Coumans & Gaffney,* for appellant.

STONE, J. The bill of complaint herein was filed to remove a cloud upon plaintiff's title to lot twelve (12) and the westerly one (1) foot of lot eleven (11)

See note in 44 L. R. A. (N. S.) 89.

in block sixty-seven (67) plat of Lower Saginaw, now Bay City, according to the recorded plat thereof, and for an injunction. The parties are owners of adjoining property and buildings in the business section of said city. The present condition of the buildings is shown by the photograph, Exhibit "M," which appears in the record and is hereto attached. Prior to the year 1915 the condition of the property was as shown by Exhibit "A," which also appears in the record and is also hereto attached.

In Exhibit "A," the building which extends from W to X is known as the "old bank building." The building which extends from X to a point half way between Y and Z is known as the "Warren" building, it having been built by one Byron E. Warren, although owned by the plaintiff during the period of this litigation. The building which extends east from the Warren building past Z and B to the alley, is known as the "Vanden Brooks building." Plaintiff's new bank building shown in Exhibit "M" occupies the space formerly occupied by the old bank building and the Warren building. An entrance doorway, within which is a stairway, is situate between the Warren and Vanden Brooks buildings in Exhibit "A." The subject-matter of this litigation is that part of the structure occupied by this entrance and stairway (marked Y-Z on said exhibit, and hereafter referred to as "the stairway"). It is the claim of the plaintiff that this stands one-half on the land of each party.

In 1871, and for a number of years thereafter, the Vanden Brooks building was owned by the father of the defendant Vanden Brooks, and the Warren building was owned by Byron E. Warren. The plaintiff has succeeded to the rights of Warren, and defendant to the rights of the elder Vanden Brooks. The buildings were constructed at the same time, probably in 1871. The stairway in dispute, which is the main

Exhibit "M."

Exhibit "A."

stairway leading from Center avenue to the second floor of the two buildings, has, as is claimed by plaintiff, its center line upon the property line, so that it stands one-half upon the land of each of the parties. It was built jointly by Warren and the elder Vanden Brooks, each paying one-half of the cost. This stairway had always been used in common by the owners and occupants of both of the blocks, and an open hallway at the head of the stairway, leading to the various offices in both blocks had always existed.

In 1914, the plaintiff owned the old bank building and the Warren building, and the defendant Vanden Brooks owned the Vanden Brooks building. Both were brick structures. The plaintiff was planning the erection of its new bank building, and desired to construct its east wall on a straight line, following the property line, which it claimed ran through the middle of the stairway. This, it is evident, would necessitate either a reduction in the width of the stairway, or a change in its position. It was the claim of the plaintiff that, although the two halves of the stairway had always been separately owned, they had always been used in common by the tenants of all of the buildings, and the plaintiff attempted to make some satisfactory arrangement with defendant Vanden Brooks, before proceeding to demolish its half of the stairway. No agreement could be made. Said defendant objected, not only to the demolition of what plaintiff claimed was its half of the stairway, but also claimed that the Warren and Vanden Brooks buildings had been so constructed, with halls, corridors and skylights used in common, that defendant had acquired a perpetual easement which entitled him to insist upon the maintenance of the Warren building, or at least to the entire stairway, as it stood.

Owing to the failure of the parties to reach an agreement, plaintiff filed this bill, praying among

other things for an injunction restraining defendant Vanden Brooks from interference with its building operations. Defendant filed an answer and cross-bill, claiming title to the stairway by adverse possession, also claiming a prescriptive easement in respect to the skylights in the Warren building, and seeking to enjoin plaintiff from altering or removing the Warren building.

In his cross-bill, referring to the erecting of said buildings, defendant Vanden Brooks stated that an agreement was entered into between said Byron E. Warren and the said Andreas Vanden Brooks by which they adopted a common building plan by which both of such contemplated buildings should be constructed upon a common plan of similar architecture and construction, and by which the areas, halls, stairways and openings in and to the second and third floors should be used in common by both of said parties, and that certain skylights in the roof of each building should be so constructed that light would penetrate and be carried to the entire halls, openings and areas of both buildings. Also that the hallways on the second and third floors which lead into the various rooms and offices thereon, were so constructed, in pursuance of the aforesaid common plan of said parties, in the erection of both of said adjoining buildings; that said hallways were lighted by skylights of similar design placed in the roofs of both buildings; that it was contemplated and understood between the owners of both of said buildings at the time of their construction that skylights would be used by both owners, and that the skylights in the building on lot 12 had become and were a necessary appurtenance in furnishing light to the halls in that part of the building owned and maintained by defendant, and that the removal of the skylights in either of the said buildings would cause irreparable injury

and damages to either of said buildings; that plaintiff was threatening to remove its said building and the skylights thereof, and to erect certain walls which would entirely obstruct any light from penetrating from the skylights above lot 12 to the halls of defendant's building on lot 11; that said course would lessen the rental value of the second and third floors of defendant's building, and would cause him irreparable injury and damage, and claiming the prescriptive easement as above stated. The plaintiff desiring to proceed with its new building, changed its plans so as to leave the stairway untouched, and notified the defendant that it would proceed to demolish its old building without further delay. Defendant at once pressed his application for a temporary injunction to restrain plaintiff, not only from interfering with the stairway, but also from interfering with the halls, corridors, and open spaces in the second and third floors of the Warren building. This application for injunction was, upon hearing, denied. The plaintiff was thus permitted to proceed, and did proceed with the construction of its new building, upon plans which left the stairway practically untouched. The final hearing did not take place until June 23, 1916, and after the new bank building was completed as shown in Exhibit "M." The said defendant declined to try any question of damages in this proceeding, so that the hearing amounted to a mere controversy over the title to the stairway, and the land occupied by it. Said defendant claimed title by adverse possession, on the ground that his tenants, and those of his predecessors in title, had always occupied the rooms over the stairway, and that he had always treated the stairway as belonging to his building. Plaintiff offered some evidence tending to show that its tenants, and those of its predecessors in title, had always occupied the basement under the stairway,

while the stairway itself had been used in common by the tenants of both buildings, including those of the old bank building. Plaintiff's real claim, however, was, and is, that neither party had acquired title by adverse possession, but that the rights of both had always been purely permissive; that as a result of the revocation of the mutual license by the plaintiff, when it planned to construct its new building, and gave notice thereof, neither party had any right, title or easement extending beyond the property line which runs through the center of the stairway. The learned circuit judge who heard the case held with the plaintiff and entered a decree quieting plaintiff's title to the center of the stairway, giving said defendant 18 months to make alterations, and remove so much of the structure as is upon plaintiff's premises, and restraining said defendant from "interfering with the free and unrestricted use by plaintiff of the premises aforesaid, and with the removal by plaintiff of any structure, or other property which may remain on said premises at the expiration of the period of 18 months aforesaid."

Upon the hearing below, it was conceded that when the building in controversy was erected, the east part of lot 12, and the west one foot of lot 11, were owned by Byron E. Warren, and the remainder of lot 11 was owned by Andreas Vanden Brooks; that the plaintiff had succeeded, by various conveyances, to the title of the said Warren, and that defendant John C. Vanden Brooks had succeeded, by inheritance, and conveyances, to the title of said Andreas Vanden Brooks. Mr. Warren's deposition was taken and read upon the hearing at the circuit. He was the principal witness as to the original agreement. On direct examination by the plaintiff, he testified in part as follows:

"I am acquainted with the stairway leading up into the Bank block from Center avenue. I came down them a good many times.

"*Q.* How was that located with reference to the property line between you and Mr. Vanden Brooks?

"*A.* It was half of it supplied by Mr. Vanden Brooks, and half by myself—half of the frontage.

"*Q.* Where was the center of the stairway with reference to the property line?

"*A.* It was the center line between the two owners, Vanden Brooks and myself.

"*Q.* How was the building built that was on your land and Mr. Vanden Brooks', that is, by contract, or by day labor if you know?

"*A.* I think both of them were built by day labor. Mr. Vanden Brooks personally superintended the construction of his part of the property, as it went along, and I did the same way. I do not know of any written agreement in respect to this stairway on Center avenue. I don't think there ever was any written agreement.

"*Q.* What kind of an arrangement was there, if any, in regard to the stairway. Was there a definite verbal arrangement?

"*A.* I don't hardly know how to answer that.

"*Q.* Describe what the arrangement was. That is the best way to answer it.

"*A.* Well, I should say that as incidents—when decisions or discussions were necessary, when it came up at the time and seemed to become necessary, we always settled it. We were working nicely together, without any friction in any way or shape, and the work went along, seemed to meet the views of both of us, and that is about all there was to the construction of the building.     *     *     *

"*Q.* How much of an understanding or agreement, if any, did you have about the location of the stairway, being on both of your lands? Explain that.

"*A.* We decided that each would furnish the same proportion of the stairway, and that was done. My recollections are, and I believe I am correct, there was an understanding between myself and Mr. Vanden Brooks that the area underneath these stairs was to become exclusively for my use, and then the stairway itself was to be used jointly, and then above the stairway, Mr. Vanden Brooks was to open, cut an opening through the wall, and have the use of that,

and myself and tenants of my building were to have the right of the alleyway, which you don't show here * * * I owned my building from 1871. I began building on it in 1871. I continued to own it, I think to 1891, then I was interested in it for a few years later. * * *

"Q. When this agreement or understanding was had between you and Mr. Vanden Brooks in regard to the use of these various spaces under and over this stairway, was anything said as to how long that use would continue?

"A. No. I guess we didn't think it would ever come to an end.

"Q. What do you mean by saying you didn't think, you and he didn't think it would ever come to an end, explain that?

"A. We didn't seem to make any provision for the future.

"Q. Did you then anticipate the tearing down of either section of that building?

"A. No, not in those days." .

On cross-examination, Mr. Warren testified as follows:

"Q. Mr. Warren, you remember that Mr. Vanden Brooks paid the entire expense of building this stairway?

"A. At the rear?

"Q. At the front.

"A. Oh, no. * * *

"Q. You shared the expense?

"A. Yes, it is my recollection that we paid for the work jointly, some way, excepting only just relating to that basement there.

"Q. And a heavy wall was built on the west side of the stairway?

"A. Yes.

"Q. North and south?

"A. Yes.

"Q. And that went to the roof and supported the roof of that same wall?

"A. I think it goes clear to the roof, both sides.

"Q. And on the east side of the stairway, a wall was built which only came to the surface of the ground, and the rest was—

"*A.* No. You mean on the first floor.

"*Q.* Yes.

"*A.* I guess that is so, may be. * * * It is my remembrance that that goes all the way up, but it is wood instead of solid. I guess all the way. * * *

"*Q.* Just tell us how the wall on the east side of the stairway was built, of what material?

"*A.* It is built of stone and brick, the first floor, and my recollection is that it was wood above that, at one time. What it is now I don't recall, I didn't look to see.

"*Q.* You considered when you built it that the dividing line on the stairway would be the wall on the west side of the stairway?

"*A.* No, no, the dividing line was right in the center, each of us owning a half of it.

"*Q.* Was that the arrangement with Vanden Brooks?

"*A.* It must have been, because it was constructed under that system. * * * The only specific agreement with reference to who should use it, was in reference to these little rooms. When we kind of got finished, that is my recollection, and I guess I am right, coming along to where we were going to do something with these spaces, Mr. Vanden Brooks and I finally decided that he should have these two little rooms over the stairway.

"*Q.* Mr. Vanden Brooks has had possession of all of the space above the stairway from the time this building was constructed?

"*A.* Yes, I guess that's right.

"*Q.* And Mr. Vanden Brooks shared in the building expense of the stairway that is in dispute?

"*A.* Yes, his half of it on his side of the building. I am almost sure about surrounding that stairway, because, as I recall it, I scolded about that on account of the fire risk, of his using wood in the construction of the first story, using studding instead of solid brick, on account of the insurance. My part would naturally cost more than the construction of Mr. Vanden Brooks."

He further testified that in painting the front of his building, he just painted up to the windows and stopped there—up to the pilaster of the stairway.

Also that he deeded to the Bank Building Company, and had charge of the property for at least a couple of years thereafter, adding:

"My best recollection is that it would be about 1892 to 1895. I should think it was about 1893."

The defendant Vanden Brooks testified that he had known this property for 25 years, and had always supposed that he had the absolute title to the whole stairway. He testified:

"I can remember back as to the condition of this building for the last 25 years. * * * I never thought anything else, but the whole stairway belonged to the Vanden Brooks' block. We always kept the stairway in repair, painted it, painted the walls, both sides. That would be right up to the west pilasters, considering that as a party wall, to the point Y on Exhibit 'A.' And we had possession of the rooms here, and rented them. At that time I had possession of everything above the stairway and I still occupy that. * * * I have control of all of that property. The west pilaster is an iron beam from the ground to the first floor, right from the basement, bottom of the basement, right to the roof, is a solid brick construction. I am referring to the pilaster as the point in Exhibit 'A,' marked Y. * * * That wall supports the roof, is a carrying wall for the roof from the second and third floors. * * * No one had ever made any claim that the First National Bank, or any successors of Mr. B. E. Warren had any title to that stairway during the 20 years, that I can remember. From the time that I had been administrator of my father's estate to the time shortly before the commencement of this suit, no one ever made any claim that the First National Bank or any successors of B. E. Warren had any interest in the stairway."

The position of the plaintiff is, as we understand it, that the use by Warren of the basement under the stairway, and by Vanden Brooks, of the rooms over the stairway, and of the joint use of the stairway itself, were in pursuance of an oral agreement

between the parties, made when the buildings were constructed; that this agreement was never put in writing, and was not made for any definite time; that the arrangement between Warren and Vanden Brooks created a mutual, revocable license; that it was revoked by the plaintiff when the bill of complaint herein was filed; and that the original property line therefore marks the present boundary line of the property.

The plaintiff, from the foregoing position, claims that in this State there can be no adverse possession or prescriptive right made under such circumstances, and that the use was a permissive user, citing *Gates* v. *Sebald*, 180 Mich. 578, 583; *Township of Jasper* v. *Martin*, 161 Mich. 336, 341 (137 Am. St. Rep. 508); and *Wilkinson* v. *Hutzel*, 142 Mich. 674. And that where there is no prescriptive right, an easement cannot be created, in real estate, by parol or estoppel, or by any other means than a grant; citing *Nowlin Lumber Co.* v. *Wilson*, 119 Mich. 406, 410, 412.

The position and claim of defendant and appellant are frankly stated in the brief as follows:

"It is not disputed that defendant Vanden Brooks, and his father had sole possession of the space above the stairway for 42 years. The answer and the cross-bill are therefore founded upon the theory of title by adverse possession in and to the lands under the stairway, and all the spaces above it. The testimony, however, discloses that Mr. Vanden Brooks had not had exclusive possession of the spaces under the stairway for the statutory period, and for this reason, in the argument, the claim of title was abandoned, and the lower court was advised, as is this court, that defendant *does not claim title* by adverse possession, but does claim an easement in the stairway and the spaces above the stairway. * * * Inasmuch, however, as claim is not made by defendant in the title of the real estate under the stairway, for the purposes of this case, the discussion as to the party wall is of no importance, except as it tends to corroborate the testimony that Vanden Brooks has maintained an adverse

user of all the space east of the wall since its construction."

Defendant says:

"Plaintiff seeks to defeat the apparent equities of defendant's position by the assertion of a hard rule of law, viz., that the testimony shows that Vanden Brooks' continual use of this stairway and the space above it, was permissive only, and that under this rule of law, his apparent rights are defeated.

"Our position is, that the facts clearly show that the original possession and continual use of Vanden Brooks was not by permissive or revocable license, but was under an agreement which was to continue for all time. However, for the sake of this argument only, and conceding that the original arrangement between Andreas Vanden Brooks and B. E. Warren was permissive and revocable in character, another hard legal rule intervenes, which this court has announced in several cases, but has been loath to enforce where it is possible to make a decision on any other ground. This rule is, that a permissive license is revoked by operation of law, when the licensor parts with his title. This court has said:

"'It is well settled that a conveyance of the land by the licensor operates *ipso facto* as a revocation of a license previously granted. *Maxwell* v. *Bay City Bridge Co.*, 41 Mich. 466; *Minneapolis, etc., R. Co.* v. *Marble*, 112 Mich. 10; *Eckerson* v. *Crippen*, 110 N. Y. 585 (1 L. R. A. 487, 18 N. E. 443).' *Toney* v. *Knapp*, 142 Mich. 652, 661.

"The testimony is undisputed that B. E. Warren parted with his title in 1891, which would be 24 years prior to the filing of the bill of complaint in this case. Therefore, even though it should be found that the original arrangement was permissive and revocable in character, upon revocation of such license, the element of permission would from that time be eliminated."

It is claimed by counsel for plaintiff that this question was a new one, not raised in the court below. Insofar as this record shows, the question is inherent

both in the pleadings and the evidence. The defendant had claimed adverse possession and prescriptive right since 1871. Now he claims it since 1891, by reason of the deed of that date. The question has been discussed by counsel for both parties upon its merits.

Conceding, as we do, the correctness of the position of the plaintiff as to the parol license and permissive use of the property in the first instance, we are constrained to hold that the deed of the premises by Warren in 1891 revoked that license and permissive use, and that the use of the defendant of the stairway and spaces above since that time has been of such a character as to give him a prescriptive right to the easement claimed. It is urged by counsel for plaintiff that the rule of revocation is a hard rule. We must say in reply that for 40 years it has been a rule of property in this State. In *Minneapolis, etc., R. Co.* v. *Marble, supra,* this court said that the rule was too well settled in this and other courts to need discussion. We applied the rule in the recent case of *Voorhies* v. *Pratt,* 200 Mich. 91. In that case, Justice BIRD, speaking for the court, said:

"The drains appear to have had their beginning in favor, extended by Mr. Hatt to defendant, and, therefore, were permissive. While they were maintained as a matter of favor, defendant could not acquire any right by adverse user. *People* v. *Ferguson,* 119 Mich. 373. After a sale of the premises to Mr. James Pratt the favor was thereby extinguished (*Maxwell* v. *Bay City Bridge Co.,* 41 Mich. 466), and the statute would begin to run."

It cannot be said that, because other persons than this defendant used this stairway, his use was not exclusive. In *Schmidt* v. *Brown,* 226 Ill. 590 (80 N. E. 1071, 11 L. R. A. [N. S.] 457), it was held that because other persons besides the claimant of a right of way used it, did not prevent the claimant's user

from being exclusive, since exclusive use means that his right does not depend on a like right in others; the court citing Washburn on Easements, § 44, p. 164; Jones on Easements, § 272; *Bennett* v. *Biddle,* 150 Pa. 420 (24 Atl. 738) ; and *McKenzie* v. *Elliott,* 134 Ill. 156 (24 N. E. 965).

We do not think there is any incongruity in holding that defendant Vanden Brooks has a prescriptive right to the use of this stairway, and the spaces above it, so long as his present building stands; and that, upon this building being destroyed, or ceasing to exist, the easement will cease, and the land of the plaintiff as described in the bill of complaint and in the decree below, would no longer be charged with the easement. As to the stairway, and the spaces above it, the *status quo* would be maintained. We are of the opinion that we should so hold. Both parties seem to be standing here upon what they claim to be their strict legal rights. Under the circumstances here disclosed, we must leave the parties where they have placed themselves.

It follows that the decree below will be reversed; and if the plaintiff so elects, a decree will be entered here adjudging that the right and title of the plaintiff in and to said lot 12 and the westerly one foot of lot 11 is established and confirmed, subject to the easement above stated. And if such election is not exercised by the plaintiff, within 60 days from the filing of this opinion, the plaintiff's bill of complaint will be dismissed.

In either case, the defendant Vanden Brooks will recover his costs in both courts, to be taxed. The party wall agreement of April 24, 1884, will not be affected by the decree.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred. OSTRANDER, C. J., did not sit.