FIRST NATIONAL BANK OF BAY CITY v. VANDEN BROOKS.

1. Licenses—Permissive User—Deeds—Incumbrances.
    Where a deed conveyed property "subject to present incumbrances," a parol license and permissive use of said premises, *held*, not to amount to an incumbrance within the meaning of the deed.

2. Joint Stock Companies—Distinct Entity.
    Since the law governing corporations is applicable to limited partnerships, a deed to a limited partnership was to a distinct entity.

3. Licenses—Parol License—Revocation by Deed.
    The rule that a deed revokes a parol license, *held*, to apply to a deed to a limited partnership, although the grantor was an officer of the grantee.

Appeal from Bay; Davis, J., presiding. Submitted October 24, 1918. (Docket No. 6.) Decided December 27, 1918. Reargued February 7, 1919. Former opinion affirmed May 29, 1919.

Bill by the First National Bank of Bay City against John C. Vanden Brooks and others to quiet title to land. Defendant Vanden Brooks filed a cross-bill claiming title by adverse possession and prescription. From a decree for plaintiff, defendant Vanden Brooks appeals. Reversed, and decree entered for appellant.

*Edward S. Clark,* for plaintiff.

*Coumans & Gaffney,* for appellant.

## On Rehearing.

Stone, J. In the opinion herein (204 Mich. 164, 178) we said:

"Conceding, as we do, the correctness of the position of the plaintiff as to the parol license, and permissive use of the property in the first instance, we

are constrained to hold that the deed of the premises by Warren in 1891 revoked that license and permissive use, and that the use of the defendant of the stairway and spaces above since that time has been of such a character as to give him a prescriptive right to the easement claimed."

Upon the motion of the plaintiff a rehearing was granted, and the case was referred to a circuit court commissioner of the county of Bay to take and report to this court,—

"such further testimony as may be produced by either party, relating to the deed or transfer and control of the property in question by Byron E. Warren, and the Bank Building Company, Limited, and in respect to the nature of defendant's possession, after such conveyance by the said Byron E. Warren; and that such testimony, and any and all exhibits offered, be printed by the plaintiff, as a supplemental record in said case."

Such testimony is before us in the form of a supplemental record and the case has been reargued by counsel. It now appears that the premises were deeded by Byron E. Warren and wife on January 8, 1891, by which deed they "convey and warrant" to the Bank Building Company, Limited, described as a "corporation duly formed and existing under the laws of Michigan," the premises in question. That deed contains this clause: "This conveyance is made subject to present incumbrances on said property." There was one recorded incumbrance, viz., a mortgage of $12,000.

It appears undisputed that the Bank Building Company, Limited, was in fact a partnership association limited, under our statute, which had been formed on January 7, 1891, and its articles of association were duly recorded on the 9th day of January, 1891. By its articles, the capital stock consisted of 250 shares of $100 each. William O. Lewis, Byron E. Warren and Stuart B. Warren were the first managers. Byron E. Warren was first chairman and William O. Lewis was secretary and treasurer.

The subscribers to the stock were as follows:

Byron E. Warren....................120 shares
Stuart B. Warren................... 50 shares
Jennie E. Warren................... 70 shares
William H. Crabb...................  5 shares
William O. Lewis...................  5 shares

Stuart B. Warren was the son of Byron E. Warren, and Jennie E. was the wife of the latter. William O. Lewis was his son-in-law and clerk, and William H. Crabb was his clerk. It appeared that none of these persons paid anything for their stock except Mrs. Warren, who exchanged other stock for it. Mr. Warren's object in organizing the company in 1891 was to enable him to use the stock to secure his obligations as indorser on the paper of the Warren-Lewis Lumber Co. After the company was organized Mr. Warren caused a part of its stock to be assigned to various creditors, but retained control of the majority interest which he pledged with the Commercial Bank, the certificates being assigned in blank. In 1896 the bank foreclosed and sold this stock. In the supplemental record Byron E. Warren testified, on direct examination, as follows:

"*Q*. Mr. Warren, after your deed to the Bank Building Company in 1891, did you continue in control of the property, and if so, how long about?

"*A*. Just about four or five years.

"*Q*. How did you lose control, how did you happen to lose control?

"*A*. By the sale of the stock.

"*Q*. To whom?

"*A*. Well, it was sold by the Commercial Bank, I don't know that they came in possession of it—I don't know about that right away or not, or whether it was bid in, I wasn't present when the property was sold, and stock.

"*Q*. Under what sort of a proceeding was it sold, as foreclosure of collateral or something of the kind?

"*A*. Yes, sir, foreclosure of collateral, foreclosure of notes.

"*Q.* That is, you had debts with the Commercial Bank secured by this stock, and they foreclosed and took the stock.

"*A.* Yes, in part, to the extent of $13,000, the rest, the other stock had been already delivered to other people, in payment of debts.  *   *   *

"*Q.* Now, between the time you conveyed to the Bank Building Company, and the time when you lost control through foreclosure of the stock held by the Commercial Bank, and during which time you say you were managing the property, describe your relations with Mr. Andreas Vanden Brooks, especially with reference to this front stairway running down to Center avenue, and especially with reference to the question as to whether the use of that stairway by your tenants and Mr. Vanden Brooks' tenants was by mutual consent or otherwise?

"*A.* It was by mutual consent, I didn't have no written contract.

"*Q.* Can you describe any more fully the arrangement between you, was it verbal, or written?

"*A.* It was verbal arrangements, I had no written contract relating to that stairway."

On cross-examination as follows:

"*Q.* This is a fact, isn't it, Mr. Warren, that your best recollection now is that not later than 1896 you ceased all connection with this corporation, and with that building in question?

"*A.* Yes, that is my best recollection, just about that time.

"*Q.* That would not be later than 1896?

"*A.* 1896 yes, no—yes, that is about right.

"*Q.* You testified before it was 1893 or 1894?

"*A.* Yes.

"*Q.* And today you say it was four or five years later?

"*A.* Not later than 1896.

"*Q.* So that taking your testimony this morning it would be not later than 1896?

"*A.* Yes, that is right, that is my best recollection."

It may be said that this date was corroborated by the documentary evidence. It will be noted that this

was 19 years before the bill of complaint was filed, which was February 26, 1915.

Charles C. Whitney, a director of the Commercial Bank and chairman of the Bank Building Company from 1896 to its dissolution in 1912, testified as to impressions and understandings gained by him from discussions on the board "from time to time" as to the nature of the use of the stairway. No definite time or conversation was stated by this witness.

Henry W. Simms, a janitor, testified to certain general conversations with Andreas Vanden Brooks with reference to the stairway. All of this testimony has been examined with care. It is not very persuasive in its character.

Plaintiff's theory on rehearing is as follows:

(1) That the rule of revocation by conveyance does not apply, because of the clause in the deed excepting "present incumbrances."

(2) That the rule does not apply because the grantee named in the conveyance was a corporation controlled and managed by the grantor.

(3) That even if the rule of revocation by conveyance does apply, there is clear, affirmative evidence of the existence of a permissive arrangement after the conveyance, which prevented the acquisition of a prescriptive easement thereafter, even if the original license had been automatically revoked.

1. The plaintiff's original position, as stated in its counsel's brief, was, that the arrangement between Warren and Vanden Brooks created a mutual, verbal revocable license. That such a license, revocable at pleasure, could amount to an interest in lands, and be an incumbrance, is a contradiction in terms, and wholly inconsistent with plaintiff's former position in the case. It was not such an easement as is spoken of in the authorities cited by counsel. The easements there referred to were easements created by deed or covenant, and were of record. We do not think that

the parol license and permissive use of the property here shown amounted to an incumbrance.

2. We have frequently held that the law governing corporations is applicable to limited partnerships. The deed then was to a distinct entity. To hold that the deed from Warren to the Bank Building Company, Limited, was not a conveyance as defined in the authorities discussed in our original opinion, would require us to hold that a corporation is not a separate and distinct entity from the persons forming or creating it. Counsel cites no authority in support of his theory, and we cannot agree with him.

3. Whatever may be said relating to the fact that Mr. Warren acted as an officer of this corporation for a time, there can now be no question that his connection with the bank ceased entirely in 1896, and it then became a question of fact as to the character of the possession of the stairway and the spaces above it, subsequent to, say, August 8, 1896.

We quoted at length the testimony of the defendant showing the adverse character of the possession, in our opinion. Has this testimony been overcome by that of the witnesses Whitney and Simms? We think not. Such testimony is too vague and indefinite as to time, place and circumstance to have that effect. Such testimony, if relating to events prior to 1900, would still leave time for a prescriptive right to mature, prior to the filing of the bill of complaint in 1915.

Counsel for plaintiff calls attention to the age of defendant Vanden Brooks. He was 33 years of age when he testified in 1916. He stated that he could remember the condition of this property for 25 years. Born in 1883, he would be 8 years old in 1891, and 17 years old in 1900. There is nothing improbable in this testimony.

We must hold that the new testimony has not, in

our opinion, sufficient probative value to warrant us in disturbing the rule which we applied in our former opinion. We must adhere to that opinion, reversing the decree below. The plaintiff may have 30 days in which to make the election referred to in the former opinion. (See 204 Mich. 164.) If such election is not exercised the bill of complaint will be dismissed. Defendant Vanden Brooks will recover his costs to be taxed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.