## Bennett *v.* Biddle, Appellant.

[Marked to be reported.]

*Way—Adverse user—Concurrent use.*

Whether the use of a way has been open and adverse for twenty-one years is a question for the jury, although concurrently used by the owner of the servient tenement: Bennett v. Biddle, 140 Pa. 396.

*Admissions of predecessor in title—Evidence.*

An admission of a predecessor in title during his ownership that he had

no right to close a way is competent evidence against a subsequent owner of the servient tenement.

*Wilful obstruction—Notice—Evidence—Damages.*

A conversation occurring before the obstruction of a way, between the owner of the servient tenement and her lessee in which the lessee expressed his opinion, in answer to her inquiry, that the way could not be closed, is competent evidence upon the question of damages, although not competent upon the character of the way.

*Excessive verdict—Judicial discretion—Review—Practice.*

If in the opinion of the trial judge a verdict for plaintiff in trespass is excessive considering only the damages suffered up to the time of the impetration of the writ, he may in his discretion permit it to stand by imposing terms on the plaintiff to file a release of all damages up to the date of the verdict; and the Supreme Court will not reverse unless satisfied that injustice has been done.

Argued Feb. 9, 1892. Appeal, No. 175, July T., 1891, by defendant from judgment of C. P. Chester Co., Oct T., 1889, No. 19, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for obstruction to way. Writ issued Aug. 27, 1889. The facts appear by the opinion of the Supreme Court.

On the trial before WADDELL, P. J., plaintiff offered George Temple, a former owner of defendant's property, as a witness, who testified, under objection and exception, that he bought the property from Henry Hulme. When he was negotiating for the farm, witness's father objected to buying the place on account of the lane being there. " Q. What was said ? A. Mr. Hulme said that he thought it could be closed, and my father went on and told him that he had known it ever since he could remember, and he knew it could not be closed. Q. What did Hulme say then? A. He gave in and said he thought it could not." [1]

Plaintiff also offered to prove by Eli Pennell, defendant's lessee, " that defendant was on this lane and wanted to know of witness, whether it could be closed up and he said in his judgment it could not." [2] Objected to. Admitted.

The court refused a request for binding instructions for defendant, [3] refused another point quoted in the opinion of the Supreme Court, and charged as follows, *inter alia :*

" As we have said, so far back as 1829 we find these farms

occupied by two brothers. The road was then through the property. Did they put it there? And if so, did they put it there for their mutual convenience? The defendant asks you to infer this was the origin of the road, and the cause of it, because the owners were brothers. [5] . . . . If, however, you are unable to find from the evidence how the enjoyment of such a use began, it is presumed to have been in pursuance of a grant. [6] . . . . In order to avoid the presumption of a grant the owner of the land must prove to the satisfaction of the jury that the use originated under some license, indulgence or special contract, inconsistent with the claim of right." [7]

Verdict for plaintiff for $168, May 13, 1891. On motion for new trial, the court held that the verdict was excessive, that damages must have been computed to date of verdict in place of date of suit, but allowed it to stand on condition that plaintiff would release further damages up to that time. This was done and judgment entered accordingly, whereupon defendant appealed.

*Errors assigned* were (1, 2) rulings on the evidence, quoting the offers but not the evidence or bills of exception; (3, 4) refusal of points, quoting them; (5–7) portions of charge as above, quoting them; and (8) entering judgment for $168 for damages as the amount assumed to be suffered mainly since suit brought, without allowing defendant to disprove it.

*E. Spencer Miller* and *William T. Barber*, for appellant.— Where the evidence on the nature of the user is unambiguous, binding instruction should be given: Com. v. R. R., 135 Pa. 256, 274. Where a user begins in comity no adverse right will be acquired by its continuance after the intervention of a stranger: Washburn, Easements, 86; Smith v. Miller, 11 Gray 145; Taylor v. Gerrish, 59 N. H. 569. Without positive acts tending to give notice: Susquehanna Coal Co. v. Quick, 61 Pa. 328. A grant is not presumed where there is evidence to explain how the use began: Garrett v. Jackson, 20 Pa. 331; Pierce v. Cloud, 42 Pa. 102; or the circumstances are consistent with the non-existence of a grant: Ricard v. Williams, 7 Wheat. 59; or with the title: Arnold v. Stevens, 24 Pick. 106, 110. Adverse user presupposes some agreement: Cooper v.

Smith, 9 S. & R. 26; Washburn, Easements, *67; Haverstick v. Sipe, 33 Pa. 368, 371. If the user is reciprocal neither is adverse.

The dangers of undiscriminating admissions by predecessors in title are pointed out in Gibblehouse v. Strong, 3 Rawle, 437. A surrender of opinion on a question of law, as in Hulme's case, is too intangible a declaration to come within the doctrine. Pennell's assertion, which was not evidence, must have influenced the jury.

The 4th point should have been affirmed. To mature a right the user must infringe upon the enjoyment of the property-owner so as to bring it home to his mind. It must cause damage: Washburn, Easements, 151; Manion v. Creigh, 37 Conn. 462; likely to produce resistance: Washburn, Easements, 155; Donnell v. Clark, 19 Me. 174, 183.

The court in the charge presents as a crucial test the point whether the mere physical marking of the track had occurred after the division upon the father's death; until the subdivision of the entire property, there could be no origin of the user in the legal sense, i. e., as applied to foreign premises. The court also overstates the burden of proof.

The court below holds the damages excessive, and yet assesses damages through a period subsequent to that involved in this issue without giving defendant an opportunity to be heard as to those damages.

*Thomas S. Butler* and *William S. Windle*, with them *William Butler, Jr.,* for appellee.—Whether the user was adverse was a question for the jury: Bennett v. Biddle, 140 Pa. 404; Steffy v. Carpenter, 37 Pa. 44. The burden of proving a special contract inconsistent with a claim of right is on the land-owner: Garrett v. Jackson, 20 Pa. 335–6. The fact that the way was over both properties, the owners, brothers, and that each used the way over the land of the other, does not, as matter of law, negative the conclusion that the user was under claim of right. Adverse user is not necessarily exclusive of the user of the owner: Wanger v. Hipple, 11 Cent. R. 776. As to adverse user of common way, and burden of proof, see especially Washburn, Easements, p. 162, citing Barnes v. Haynes, 13 Gray, 188. Actual damage need not be shown,

provided there is an invasion of rights : Washburn, Easements, p. 156. In Smith v. Miller, 11 Gray, 145, it was admitted the user began by permission. In Garrett v. Jackson, 20 Pa. 331, there was evidence to that effect, but that question was left to the jury. That case is on all fours with our case.

If the jury believe the user was adverse, the right was complete by analogy to the statute of limitations: Okeson v. Patterson, 29 Pa. 22.

Declarations of a party as well as the understanding of his neighbors, are competent evidence to show the nature of the claim and possession : Kennedy v. Wible, 11 Atl. Rep. 98. Hulme's declarations were against interest and tended to show a use without any mutual arrangement. Want of knowledge by one of the parties tends at least to disaffirm the existence of any arrangement.

OPINION BY MR. JUSTICE WILLIAMS, July 13, 1892.

This case turns upon a single question of fact. The parties own adjoining farms which in 1826 came into the possession and ownership of two brothers, John Bennett and Thomas Bennett. John lived on his farm till his death in 1882 and his son, the plaintiff, succeeded him. Thomas died in 1842. On the settlement of his estate his farm became the property of T. Elwood Bennett his son, who in 1855 sold it to Abram Huey. The defendant bought it in 1876. From 1826 to 1855, a period of twenty-nine years, both farms were owned by the Bennetts. During the next thirty-four years the defendant's farm has been owned outside the Bennett family. The eastern boundary of the John Bennett farm is a public highway. The Thomas Bennett farm extends to and is bounded on the west by another highway. Extending from one of these highways to the other in a straight line, passing nearly through the centre of each farm, and making a means of direct communication between the farm buildings on both, is a lane or way that has been in use since 1826. The defendant obstructed this way on her side of the line between the farms, in 1889, and the plaintiff brought this action to test her right to maintain the obstruction. He alleges that he and his father, under whom he claims, have acquired a right to use the way by an original grant or by adverse user which presumes a grant. The defend-

ant maintains on the other hand that the use of the lane began, and has been continued, as a matter of mutual accommodation to the occupants of the respective farms, and has always been casual and permissive.

This presents the question of fact on which the case depends, viz.: What is the character of this way? Has its use been permissive or adverse? Upon the first trial of this case in the court below the learned judge held that, although the use of the way may have originated in the intimate relation of the brothers Bennett so that as between themselves no rights were acquired by the user; yet the sale of one of the farms to a stranger operated, as matter of law, to dissolve the previously existing relations; so that if the plaintiff and his father thereafter " used, occupied and enjoyed the way openly and notoriously, such an occupation, without opposition on the part of Mr. Huey and those who succeeded him in title, was in our opinion adverse." We held that a change in the ownership of these farms did not necessarily work a change in the relations between their occupants, nor convert a use that had previously been permissive, because mutually advantageous, into an adverse and hostile use. Whether such a change had taken place at any time in the attitude of the respective owners was a question of fact to be determined by the jury upon the evidence, not a question of law to be determined by the court upon an inspection of the title papers: Bennett v. Biddle, 140 Pa. 396.

Upon the last trial the court below submitted the question to the jury and it has been decided in favor of the plaintiff. The jury have found as a matter of fact that the occupancy by the plaintiff and his father, of this way, has been adverse as well as open for a period of twenty-one years or more. If this conclusion was reached upon competent evidence and under proper instructions it should not be disturbed.

The first assignment of error is not sustained. The declarations of Hulme, a predecessor of the defendant in title, though not very strong, were competent evidence.

The statement of Pennell made to the defendant that in his opinion the way could not be lawfully closed by her may not be competent upon the main question of the character of the way. Pennell was a competent witness and his knowledge of any pertinent fact should have been shown by him as a witness; but upon the question of damages it was competent. It show-

ed that the defendant's attention was upon the subject, and that one to whom she applied for an opinion, because of his knowledge of the facts, had advised her against obstructing the way. She did it therefore not in ignorance of the situation, but with full knowledge. The evidence showed her investigation and its results. The second assignment is therefore not sustained.

The remaining assignments to and including the seventh raise another question that may be best stated in the language of the defendant's fourth point: "If the jury find that the tract in question upon which the plaintiff claims a right of way has been needed for the convenience of the defendant and those who occupied the farm before her, and that the concurrent use of the track by the occupants of the plaintiff's farm did not interfere with such use or otherwise with the enjoyment of defendant's farm, their verdict must be for defendant." The trouble with this proposition is that it leaves out of view the character of the concurrent use. The use might be concurrent and the way might be needed by the defendant, but if the plaintiff entered upon it under a claim of right to use it, and did, in opposition to the will or without the consent of the defendant and her predecessors in title, continue in such hostile use for the requisite period, a title would be acquired which the law would protect. It was not error therefore to decline to give the instruction asked.

The eighth assignment raises a question of regularity in the exercise of judicial discretion. The verdict in favor of the plaintiff was for the sum of one hundred and fifty-eight dollars damages. Whether this should be set aside as excessive was a question for the trial judge. He solved the question in a way that is unusual. He said in substance "this verdict is too large for the time covered by the plaintiff's claim; but if the plaintiff will release the damages accruing by reason of the obstruction complained of, for the time elapsing between the bringing of suit and the date of the verdict, nearly two years, we will leave it to stand as reasonable for the time so covered by it." We are not disposed to interfere with this order because we are not satisfied that any positive injustice has been done by it, and because it is fairly a subject of discretion.

The eighth assignment is therefore overruled and the judgment affirmed.