MALCOLM S. McCONIHE *v.* WILLIAM BROOKE
EDMONSTON ET AL.

[No. 11, January Term, 1929.]

*Decided March 20th, 1929.*

The cause was argued before BOND, C. J., URNER,
OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*A. M. Bowie* and *R. H. Yeatman,* with whom was *George
D. Horning, Jr.,* on the brief, for the appellant.

*Thomas L. Dawson* and *Walter W. Dawson,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

The question that is presented for determination in this case is, Does the appellant own in fee simple, unencumbered by any easement in the nature of a right of way, a strip of ground located in Montgomery County, Maryland, being 30 feet in width and extending for about 525 feet from the Rockville-Washington turnpike to an overhead bridge 14 feet in width, constructed across the right of way of the Metropolitan Branch of the Baltimore & Ohio Railroad. The appellant's contention is that he is such a fee simple owner, while the contention of the appellees and the decision of the lower court is that they, the appellees, are entitled to a right of way over said strip for the purpose of ingress and egress to and from their property, which lies on the opposite or east side of said railroad. The appellant, under his claim of ownership, placed a fence or obstruction across said 30-foot strip near the railroad bridge, which obstruction was removed by the appellees. The appellant then filed his bill in the Circuit Court for Montgomery County praying for an injunction restraining the appellees, their servants and employees, from using the said strip as a right of way appurtenant to the appellees' land.

The undisputed facts, as gathered from the record, are that a certain James W. Higgins was the owner of a farm in Montgomery County, being a tract of land bounded on the west and southwest by the Washington-Rockville pike for a distance of about 2,500 feet, and bounded on the south and southeast by a county road for a distance of 1,255 feet. The Higgins dwelling house and farm buildings were located from 750 to 800 feet in an easterly direction from the Rockville-Washington pike, and access to the same was from this pike. During his ownership of the farm, the Baltimore & Ohio Railroad acquired a right of way through his land, which resulted in about 35 acres of the farm being on the west side of the railroad, between the railroad right of way and the said pike, and the remainder on the east side, upon which latter portion were located the dwelling house and farm

buildings. By virtue of a requirement in its charter, the railroad company in 1872 constructed an overhead bridge across its right of way for the use of Mr. Higgins, thereby providing communication between both sections of his farm, and also a place of ingress and egress from the Rockville-Washington pike. Over the railroad right of way, as it extends through this property, are two lines of tracks for north and south bound trains, and there are deep cuts and steep embankments to either side of said right of way, with a large overhead bridge erected on concrete abutments connecting the two parcels.

Mr. Higgins for many years farmed the land on both sides of the railroad right of way, and used the overhead bridge as a means of access between the two portions of the farm, as well as a means of ingress and egress to the pike as above stated. The appellant's grantors were the heirs of Mr. Higgins, and, while they owned the property, they used it in the same way, including the strip in dispute, as had been done by their ancestor. Upon the appellant acquiring the property in 1914, he and his tenants also continued to use this way across the railroad bridge to the pike. In 1916 the appellant sold to Sidney I. Law the southern portion of the property, lying to the west of the railroad and containing about 18 acres. This 18-acre tract, in the deed to Law, was described by metes and bounds, courses and distances, and included within its boundaries a portion of the road which had theretofore been used from the railroad bridge to the pike.

Directly after the acquisition by Law of this 18-acre tract, he erected a house near the northwest corner thereof, which occupied a portion of the site of the road theretofore used. A tenant of the appellant testified that he was employed by Law in the excavation for the cellar of the house, and was at that time told by the appellant to move the road further to the north, so that the south line of the road would coincide with the north line of Law's 18-acre tract, and which would make a straight road from the west end of the railroad bridge

4

to the pike; which was done, and the road from that time was used as thus changed.

About a year after the conveyance of the 18-acre tract to Law, the appellant then sold another tract on the west side of the railroad containing about 14 acres; this tract was also described by metes and bounds, courses and distances, and embraced all of the land then belonging to the appellant located on the west side of the railroad, except the strip of land 30 feet wide running from the bridge to the pike, which was then used, and has since been continuously used, as a right of way from the pike over the bridge to the land east of the railroad, up to shortly before the filing of the bill in this case. In other words, these two tracts of land, one containing 18 and the other 14 acres, were sold by the appellant to the same party, Law, but were separated by the 30-foot strip now in dispute; the north line of the 18-acre tract running from the pike to the southwest corner of the bridge, and the south line of the 14-acre tract being parallel therewith and 30 feet distant therefrom, and running from the pike to the northwest corner of the bridge.

The next conveyance by the appellant was to the International Shoe Heel Corporation, by deed dated December 31st, 1920, and conveyed by metes and bounds all of the appellant's remaining land on the east side of the railroad. This deed contained the following clause, "Together with the buildings and improvements thereupon, erected, made or being; and all and every, the rights, alleys, ways, waters, privileges, appurtenances, and advantages, to the same belonging or in anywise appertaining." There was no mention made of the strip of land extending from the bridge to the pike, and it was not embraced within the metes and bounds of that deed, although at that time it was the only apparent roadway from a public highway to the property sold. Two deeds of trust were executed by the corporation to secure a portion of the purchase money. The first was dated December 31st, 1920, to secure 680 bonds of $100 each, and conveyed "all of those certain six hundred and eighty-one lots

designated and shown on the plat of what is known as 'Section A' subdivision of Halpine Park, Montgomery County, Maryland, which said plat was made by Maddox & Starkey, Surveyors, and is to be recorded, just prior to this deed, among the Land Records of Montgomery County, Maryland." There was excluded from this deed of trust about 8 acres on the county road, being the southern portion of the land on the east side of the railroad, which was set aside and known as the "Factory Site." The second deed of trust was dated March 10th, 1921, and conveyed the land on the east side of the railroad containing 87 and a fraction acres clear of the railroad, "but excepting and not including in this deed of trust all of the 681 lots, streets, and avenues as shown on plat of record among the land records of said Montgomery County, Maryland, said plat designated as 'Section A' subdivision of Halpine Park, Montgomery County, Maryland."

The deed to the corporation, the two deeds of trust, and the plat, were all recorded on March 26th, 1921, they having been held in escrow by Frank Higgins, attorney representing the appellant, the appellant being then the owner of certain of the bonds secured by the deed of trust. This plat had upon it the following: "Owner's dedication. We, the undersigned makers of this plat hereby enter the same for record and dedicate the avenues, streets and roads to public use as indicated thereon. A. K. Pomeroy, president. E. W. Cissel, treasurer." This plat shows the factory site bounded on the west by the railroad right of way, on the south by the county road, and on the east by a 40-foot avenue shown on the plat as Halpine Avenue. It further shows the subdivision of the remaining land on the east side of the railroad into 681 lots, with various streets and avenues delineated thereon, one of which is Halpine Avenue running near the eastern boundary of the subdivision, its full length, to the county road at a point east of the factory site and also east of the railroad. It shows the Georgetown-Rockville (Washington-Rockville) pike, the county road, the two lots sold by the appellant to Law, now owned by Philander C.

6

Johnson and wife, and prominently shows the overhead bridge, the east end of which opens into one of the avenues in the subdivision, and the west end opening into the 30-foot strip now in dispute, which strip is indicated on said plat by two lines extending from the bridge to the pike, one of which lines marks the northern boundary of the 18-acre Law tract, and the other of which marks the southern boundary of the 14-acre Law tract. This plat was dated December 29th, 1920, and was in existence and known to the appellant at the time of his conveyance to the corporation, that deed being dated December 31st, 1920. Default occurring under the covenants of the deed of trust covering the property which had been subdivided as shown by the plat, and which lay adjacent to the overhead bridge, it was sold by the trustee to Raymond M. Hudson, the grantor of the appellees.

The record further shows that the subdivision of this property was solely on paper, and none of the lots or streets as shown on the plat were ever marked on the ground or any of the lots sold; that at the foreclosure sale in May, 1924, the property was sold as a whole, and has been occupied since that time as a farm, the 30-foot strip being used as a right of way from the pike over the bridge to the farm, and there being no other visible way laid out from any public road as a way from the public highway to the farm or to the buildings thereon; that the 8-acre tract designated as a factory site embraced the whole county road frontage east of the railroad, with the exception of 40 feet designated on the plat, but never laid off on the ground, as Halpine Avenue. This "Halpine Avenue" is separated from the county road by a fence, and would traverse, if laid out, wet, springy, or boggy ground. At the time of the conveyance from the appellant to the corporation, he owned in fee simple the land on the east side of the railroad and also the 30-foot strip in dispute. Therefore the question is, Was a right of way over this 30-foot strip granted by implication by that conveyance? In other words, did the corporation acquire, by implied grant, an easement in the nature of a right of way over the 30-foot strip from the bridge to the pike?

What easements do or do not pass by grant or by reservation, have been the subject of numerous decisions in this state, the distinction between an implied grant and an implied reservation having been preserved throughout these decisions.

In *Janes v. Jenkins,* 34 Md. 1, the question there under consideration was whether or not, the grantor being the owner of two lots, the grantee of the one on which a house was erected was entitled to the free use and enjoyment of the lights in the walls as they then existed, as an incident and appurtenance to the land conveyed. Judge Alvey, speaking for this court, said: "The lights were then in existence, and were used and enjoyed as appurtenant to the Eastern lot, and being placed in the wall by the authority and under the grant of the appellant, while he was owner of the reversion; this is not different in principle, from the cases of the owner of two adjoining heritages, selling one, or of the owner of an entire heritage, selling and granting part; in which the law would seem to be well settled, that by the grant of the adjoining heritage, or part of an entire heritage, there will pass to the grantee all such continuous and apparent easements as may be, at the time of the grant, in use for the beneficial enjoyment of the parcel granted; and this by implication, unless words are used in the grant, manifesting an intent to exclude them. Whenever, therefore, an owner has created and annexed peculiar qualities and incidents to different parts of his estate (and it matters not whether it be done by himself, or his tenant by his authority), so that one portion of his land becomes visibly dependent upon another for the supply or escape of water, or the supply of light and air, or for means of access, or for beneficial use and occupation, and he grants the part to which such incidents are annexed, those incidents thus plainly attached to the part granted, and to which another part is made servient, will pass to the grantee, as accessorial to the beneficial use and enjoyment of the land."

In *Burns v. Gallagher,* 62 Md. 462, in which the question of the right to use an alley was in dispute, in an opinion,

8

also by Judge Alvey, it was said: "We may suppose these purchasers were induced to buy and pay for the lots, as doubtless they were, because of the existence of the apparent easements and privileges annexed to them; and in order to ascertain what passed to the purchasers under the assignments of the leases, regard must be had to the state of the premises, and the manner of their enjoyment, at the time the assignments were made. The general principle of law is, that where a person makes a grant or conveyance of property he impliedly grants that also which is necessary to make the grant or conveyance of the principal subject effectual and beneficial; and in this case we must suppose that it was the intention, as doubtless it was the expectation, of the parties, that the premises sold and transferred to Gallagher should be used and enjoyed with the same easements and privileges with which they had previously been used and were then enjoyed. And Coffay being then the owner of the easterly lot, through which the alley ran to Decker Street, and being a party to the sale of the middle or central lot to Gallagher, beneficially interested therein, he would be estopped to deny or question the right of the occupants of the latter lot to use the lot as it was then and had been formerly used, through the adjoining lot on the east."

In *Eliason v. Grove,* 85 Md. 223, the opinion being by Chief Judge Boyd, it was said: "It is true there have been many decisions to the effect that an ordinary way, not being a way of necessity, which has been used during the unity of ownership, will not pass upon a severance of the tenements unless proper terms are used in the conveyance to show an intention to create the right *de novo.* It was so held in *Oliver v. Hook,* 47 Md. 301. But there are a number of cases which hold that ways may be so improved and well defined as to bring them within the class of easements, or quasi-easements, known as continuous and apparent, and hence pass by implied grants. The tendency of many modern decisions has been to broaden the meaning of the term 'way of necessity,' so as to pass 'ways' by implication. In the case of *Burns v. Gallagher,* 62 Md. 462, it was held that the right

to the use of the alley in controversy was vested in the plaintiffs by implied grant, or rather by way of estoppel. As long as one person owned both properties it could not properly be said that an easement existed in favor of one of them, as the owner could not have an easement in his own land. But whilst that is true, it is also well settled that if during the unity of ownership the owner of two properties uses one for the benefit of the other in such manner as would have given rise to the presumption that an easement existed, if the tenements had been held by different persons, then upon a conveyance of the property so used an easement will be granted to the purchaser, provided the use has been such that the easement resulting from it would be of the class known as continuous and apparent and would be necessary for the reasonable enjoyment of the property conveyed. Whilst courts should not be too ready to sustain grants by implication, yet if at the time of the purchase of property there are visible and apparent easements and privileges annexed to it, which are necessary for its reasonable enjoyment, we must assume that they were taken into consideration when the price was agreed upon and that the use of them was paid for. We are not unmindful of the fact that the owner of two tenements may use each for the benefit of the other in such manner as he would not be willing to continue if he sold one of them, but if the use has been of such character as to induce the public to believe that it was attached to the property and is so to continue, it is but fair to a purchaser that a change of the state of the premises be made before the sale is consummated, or notice be given of the intended change by a provision in the deed, if the vendor does not intend to permit the former use of the premises to continue. That would not be asking too much of the vendor."

Again, in *Dinneen v. Corporation for Relief of Widows, etc.,* 114 Md. 589, the facts were that the defendant, owner of a tract of land, conveyed a portion of it to F., and there was then made a private road leading through the land retained by the grantor to the part conveyed, and while this roadway was not the only means of access ·to F.'s tract, it

was reasonably necessary for the same, and was an open and visible easement. Upon this state of facts, the court, speaking through Judge Urner, held that, as between the defendant and F., the latter was entitled to an easement in the road, that the title acquired by the plaintiff was subject to this visible easement, and that therefore the plaintiff was not authorized to close the road, but owned the fee in it subject to the right of way over it possessed by F. In that case the court approved what was said in *Eliason v. Grove, supra,* and adds: "The case before us is well within this principle. The road in question was not only an open and visible easement, but it was reasonably necessary as a means of access to the inn, the other road to which reference has been made having, according to the testimony, been rendered unfit for travel by the construction of a railway cut through the property about the year 1901, in consequence of which the road now in controversy was opened."

In *Kelly v. Nagle,* 150 Md. 125, this court said: "An implied grant of an easement is based upon the principle of construction that where a man grants a definite thing, there accompanies it, by implication, as a part of that grant, everything necessary to its reasonable enjoyment, or at least those things which the common owner has used for the benefit of, and which are appurtenant to, the thing which is granted, during the time it was in his possession. Or, in other words, upon the grant by the owner of part of his property, as it is then being used and enjoyed, there will pass to the grantee all those continuous and apparent quasi-easements which are necessary to the reasonable use and enjoyment of the property granted, and which have been and are at the time of the grant being used by the owner of the entirety for the benefit of the part granted." The court then quoted with approval the rule of the common law upon the subject, as stated in 14 *Cyc.* 1166: "That where the owner of two heritages, or of one heritage consisting of several parts, has arranged and adapted these so that one derives a benefit or advantage from the other of a continuous and obvious character and he sells one of them without mak-

ing mention of those incidental advantages or burdens of one in respect to the other, there is in the silence of the parties an implied understanding and agreement that these advantages and burdens respectively shall continue as before the separation of the title." The court then continued: "It is also well settled that such quasi-easements as pass by implication and ripen into easements for the benefit of the grantee of the dominant estate, must have been, and must be at the time of the conveyance, apparent and continuous. In *Tiffany on Real Property*, vol. 1, page 706, it is stated: 'that an easement to be thus created by implied grant must be apparent, is conceded by all decisions; and it is apparent, it is said, for this purpose, if its existence is indicated by signs which must necessarily be seen, or which may be seen or known on a careful inspection by a person ordinarily conversant with the subject.' In other words, to be apparent, as used in this connection, requires that the quasi-easement or use enjoyed by the dominant tenement and imposed as a burden upon the servient tenement, must be visible, or such as would come to the knowledge of a prospective purchaser of either the dominant or servient estate by such an examination of the premises as is ordinarily made by one desiring to purchase."

And in the very recent case of *Knight v. Mitchell*, 154 Md. 102, Chief Judge Bond states the principle as follows: "Implication of a grant of an easement in favor of one portion of a property, when ownership of the whole is severed by conveyance, arises from the intention and expectation of the grantor and grantee of that portion, to be presumed from its apparent dependence on the other; or, stating the principle in another way, after the severance the grantor is estopped to deny to the severed portion the uses and advantages of the remaining portion which have been connected with it in such a way as naturally to lead the grantee to assume that they pass with it. Easements of all kinds may thus be implied in Maryland."

It is clear from these authorities that, when the appellant conveyed the land on the east side of the railroad to the Inter-

national Shoe Heel Corporation, there were granted by implication all of those easements in the remaining land of the grantor upon which the land granted was plainly dependent, and which it must be presumed entered into and formed a part of the consideration passing from the grantee to the grantor. It is argued by the appellant that only those rights of way pass by implied grant which are of strict necessity, but we do not so interpret the former decisions of this court, and we see no logical reason for making a distinction in this respect between rights of way and other easements, provided the right of way is continuous and apparent. The underlying principle in these cases is that of estoppel, it being clearly inequitable to allow the grantor to sell his property with easements attached thereto, so visible and apparent as to induce the purchaser to rely upon them as constituting a portion of the value of the property so sold him, and subsequently permit the grantor to deny that these easements passed to his grantee. There are cases which uphold the contention of the appellant in this respect, but in our opinion a close examination of these develops that they turn not on the question of necessity, but on the question of whether or not the right of way was so definitely marked and so visible and apparent as to form a part of the consideration for the property.

We are clearly of the opinion that the facts of the present case bring it fully within the principle of an easement which passes by implication. Whether it does or not must be determined as of the time of the severance of the tenement, which is in this case at the date of the deed from the appellant to the corporation. At that time the appellant was the owner of the property on the east side of the railroad which is described in the deed, but only owned on the west side of the railroad this 30-foot strip of land extending from the pike to the overhead bridge, which he had carefully refrained from conveying to Law, and which had been used and was then being used as a right of way over the bridge to the large tract lying on the east side of the railroad, which he was then

selling. A purchaser, upon inspecting the property which the appellant was offering for sale, found this situation: 87 acres of land lying on the east side of the railroad, with an overhead bridge across the railroad tracks, connected with the pike by this 30-foot strip of land, and no other road entering the property. It is true that this property which he sold abutted on the county road a short distance, but the testimony shows that this county road was not a highly improved road, and, in order to get from any point on the county road adjoining this property to the improved pike, it is necessary to pass over the double track of the Baltimore & Ohio Railroad at grade, while the right of way over the 30-foot strip affords a shorter and safe way to the pike, and is the only way which has been used for ingress and egress to the property sold for at least fifty years.

The corporation factory site now occupies all of the frontage on the county road with the exception of 40 feet which upon the plat is designated as Halpine Avenue, and which the appellant contends, upon its recording, was a dedication of that avenue, and was notice to the appellees and their predecessors in title. But again, the testimony shows that the deed to the corporation, and the plat, were recorded at the same time, and upon the plat the bridge and the 30-foot strip are clearly and prominently displayed, in addition to the fact that an examination of the plat by a prospective purchaser would have indicated that this right of way over the bridge to the pike was used as appurtenant to the property sold, to the same extent as Halpine Avenue, and when the prospective purchaser inspected the physical property he would have seen that Halpine Avenue, as delineated on the plat, had never been marked out upon the ground, while the roadway leading from the bridge was visible and apparent.

The answer is made by the appellant that he did not join in the dedication said to have been made by the plat, this having been made by the corporation, and it could not dedicate what it did not own. This might be true as an abstract proposition, but when we examine the circumstances sur-

rounding the transaction we must conclude that it was the intention of the appellant to have the right of way over the bridge to the pike pass by implication as appurtenant to the property sold; and the fact that the corporation's plat showed so prominently the overhead bridge and right of way to the pike is a strong indication that it considered that this right of way passed with the deed to it.

In addition, we think this plat is also a strong indication that the appellant intended this 30-foot strip to constitute a right of way to the land on the east of the railroad, because the testimony shows that the plat was made before the deed to the corporation, and both the deed and the plat, together with the two deeds of trust which were placed upon the property, were left in the hands of the appellant's attorney, and finally all recorded on the same day. Thirty feet is the legal width of a county road in Montgomery County, and the fact that the appellant sold all the land on the west side of the railroad with the exception of a strip of that width, over which he, his tenants and the public generally were traveling to and from the pike and the land on the east side of the railroad, is practically conclusive of his intent to have such an easement pass as appurtenant to the land sold to the corporation. There is a contract in the record, between the appellant and the now owners of the land on the west of the railroad lying on each side of this 30-foot strip, to pay the appellant $3,000 for the strip if he be successful in his contention, which indicates considerable value of this strip to the party owning the land on each side of it, but it would have no such value to the average person; and the appellant would hardly have retained title to a strip of land 30 feet wide and 525 feet long for the purpose of a future sale. The evidence is convincing that the use of this strip for a right of way was visible and apparent, it extending from the pike to the overhead bridge; this bridge can be seen from the pike, as also the roadway between the two; and fully measures up to the requirement that an easement, to pass by implied grant, should be apparent.

There are exceptions taken by the appellant to certain testimony throughout the record. We have reached our conclusion without regard to this testimony, and therefore find it unnecessary to pass upon its admissibility.

The conclusion of the lower court was that the appellees were entitled to a right of way from the pike over the 30-foot strip and bridge to their property lying on the east of the railroad. Being in accord with that conclusion, the decree of the lower court will be affirmed.

*Decree affirmed, with costs to the appellees.*