FRANCES B. W. DALTON, ET AL. *v.* THE REAL ESTATE AND IMPROVEMENT CO.

[No. 36, October Term, 1947.]

*Decided November 10, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*John Grason Turnbull*, with whom was *Matthew S. Evans* on the brief, for the appellants,

*John S. Stanley* and *D. Heyward Hamilton, Jr.*, with whom were *Marvin I. Anderson* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a bill for specific performance, filed by the appellee (the real estate holding subsidiary of the Baltimore & Ohio Railroad) against the appellants in the Circuit Court for Anne Arundel County. The contract of which performance is asked, is an alleged agreement for the construction of roads and fences. The amended bill of complaint alleges that the appellee and the appellants own contiguous tracts of land which border on Curtis Creek. Both tracts also border on Pennington Avenue, but where they meet Curtis Creek the appellee's tract is between Pennington Avenue and the land of appellants. On each tract of land are wooden bungalows or shacks along the shores of the Creek, and on appellants' tract there is a farm house. The tenants of appellants have been accustomed to use two dirt roads which run over the land of the appellee in order to get access to Pennington Avenue, the main highway to Baltimore. Their use of these roads has been based upon a claim of right by virtue of a deed of partition and by prescription. The appellee denied the right of appellants and their tenants to use these roads, but claimed that if there was any right in appellants by virtue of the deed of partition, then for the same reason and to the same extent, the appellee and its tenants had the right to use part of one of these dirt roads which ran over the land of the appellants. These conflicting claims resulted in negotiations between the parties and their attorneys. Finally an agreement was drawn up and approved by the attorneys acting on behalf of their respective clients.

This agreement was then submitted to the appellants by their attorney. The appellants declined to execute it, but decided to do something themselves to settle the controversy. As a result, their attorney wrote a letter to the attorney for the appellee which was as follows:

"December 11, 1944

"Mr. Heyward Hamilton
  "1604 First National Bank Building
  "Baltimore, Maryland

"Dear Heyward:

"Mr. and Mrs. Dalton and I have again been discussing the proposed agreements with the B. & O. Railroad in connection with the two crossings over your right-of-way and also the situation with respect to the roads.

"After considerable thought, we have arrived at a solution which I think should be entirely satisfactory to all concerned, and will not necessitate the signing of any agreements:

"1.   No change from the present status with respect to the crossings is contemplated.

"2.   With respect to the road shown in yellow on the aerial map coming in from Hawkins Point Road, and which is now used by Mr. and Mrs. Dalton's tenant, Mr. Fender, Mr. and Mrs. Dalton will as soon as possible give Mr. Fender exit to their present driveway and replace the gate through which Mr. Fender is now passing with a solid fence, thereby effectively closing the use of the road in question.

"3.   Mr. and Mrs. Dalton will project their present fence across the road shown in green on the aerial map down to the edge of the bank and will construct a new road on their property from where the present road shown in green reaches the projected fence, along side of the now existing fence and connect up with the new road they are making for Mr. Fender.

"The effect of this will be that Mr. and Mrs. Dalton's tenants will have ingress and egress to the Hawkins

Point Road entirely over the Dalton property and will not be compelled to cross over any of the property owned by the B. & O. Railroad, or the Real Estate and Improvement Company of Baltimore City. By so doing, I think we effectively dispose of the question as to the rights of either party over the others property.

"Very truly yours,

"Robert France."

To this letter appellee's attorney replied as follows:

"December 14, 1944

"Honorable Robert France,
   "501 Union Trust Building,
   "Charles & Fayette Streets,
   "Baltimore 1, Maryland.

"Dear Bob:

"I have your letter of the 11th inst. concerning the proposed agreements between Mr. and Mrs. Joseph C. Dalton and The Baltimore and Ohio Railroad Company and The Real Estate and Improvement Company. As I understand it, Mr. and Mrs. Dalton do not claim any right of way or right of any other kind in or over the tract of land owned by The Real Estate and Improvement Company and lying immediately to the north and west of their property on the east side of Curtis Creek south of Pennington Avenue. This being the case, the action suggested in your letter is satisfactory to the two Companies; and I agree with you that it should effectively dispose of the questions that have arisen so far as the use of the various roads in concerned.

"You told me that Mr. Dalton expects to begin to build the new road at once and that he estimates that both the road and extension of the fence can be completed by the first of next year. At all events, I suppose that the work should be finished not later than the end of next February and, in order to accommodate the Fenders and the other tenants of Mr. and Mrs. Dalton in the meantime, I assure you that The Real Estate and Improvement Company is willing to permit these tenants

to continue to use the roads outlined in green and yellow on the aerial map which is, attached to the proposed agreement I sent you. I understand, however, that the parties agree that until the road is built and the fence completed, the use of these roads will be entirely permissive, as it has been in the past.

"Trusting that you will find the above satisfactory and with my best wishes, I am

"Sincerely yours,

(Signed)   D. Heyward Hamilton

"DHH:JCK

"P.S.   Will you be good enough to advise me when the new road is entirely completed?

"D.H.H."

No reply was received by Mr. Hamilton to his letter. He communicated with Mr. France at various times to find out what was being done, and was informed that the weather in December, January and February had prevented any action. Finally, after the end of February, Mr. France advised Mr. Hamilton that the appellants had changed their minds, and were not going to do what he stated they would, in his letter. Thereupon, the original bill of complaint was filed. It was subsequently amended, and the appellants demurred to the amended bill. The Chancellor overruled the demurrer, whereupon an appeal was taken here.

The appellants contend that there is no contract, that there was no consideration for the letter of December 11th, that it lacked mutuality, and that the amended bill does not disclose a cause of action warranting a decree for specific performance. The appellee takes exactly the opposite position on each of these questions, and earnestly contends that there was a meeting of minds between the parties, that there was a compromise settlement of a controversy which should be enforced by the court, and that the element of mutuality existed because the construction of the fences would result in the relinquishment by the appellee of its right over the

property of the appellants. The Chancellor agreed with the contentions of the appellee.

There can be and is no contention that a valid contract cannot be made by letters. If one party makes an offer in a letter and that offer is certain and definite, and the other party replies accepting that offer on the terms in which it is made, a valid contract ensues. *Buffalo Pressed Steel Company v. Kirwan,* 138 Md. 60, 113 A. 628. Nor does there seem to us to be any question, on the face of the bill, that the attorney for appellants was authorized to write the letter of December 11th by his clients. In this respect, the case is different on the facts from the recent case of *Kaufmann v. Adalman,* 186 Md. 641, 47 A. 2d 755, and *Brown v. Hogan,* 138 Md. 257, 113 A. 756. But the preliminary question is whether the letter of December 11th constituted an offer which could be made the basis of an acceptance, and thereby, when answered, could create a binding contract. We are unable to find that it is such an offer and, therefore, we reach a different conclusion on the demurrer than that of the learned Chancellor.

The parties had before them an agreement which had been prepared with the end in view of settling all claims and controversies between them. That agreement, the terms of which were set out in the bill of complaint, provided that the appellants agreed they had no legal right to use Dirt Road No. 1, and in consideration of such agreement the appellee granted them permission to use that road on certain conditions and subject to revocation. The letter of December 11th states that the appellants and their counsel have arrived at a *solution* which will not "necessitate the signing of any agreement." The solution proposed was something to be done entirely by the appellants. They were going to give their tenants an exit to a driveway, which they had on their property, and were going to build a solid fence across the road which such tenants were using so that they could not drive over appellee's property. They were also going to project a fence already in existence across the other

dirt road, which their tenants were using, and were going to construct a new road on their own property so that all their tenants would have ingress and egress to the Hawkins Point Road (which is Pennington Avenue) entirely over their own property, and would not be compelled to cross any of the appellee's property. The closing sentence of Mr. France's letter reads "By so doing, I think we effectively dispose of the question as to the rights of either party over the others property." This letter did not contemplate that any action should be taken by the appellee, nor that any assent should be given to the action which the appellants proposed to take. They were going to build a fence on their own land, and build roads on their own land, so that their tenants could go in and out without using the disputed rights of way. They could do all of this without the consent of the appellee, with the possible exception of the construction of the fence which would prevent the appellee from using the roads on appellant's property. However, it appears from the record that this contention was only an alternative one made by the appellee in case the right of the appellant to use the road should be established under the deed of partition. In other words, the appellants intended to act decisively on their own behalf without any agreement or assent by the appellee, and so notified the latter. The effect of doing what they said they were going to do would probably be to give up any rights they might have had to cross appellee's property, but they did not specifically agree to such waiver, either at the time of writing the letter or in the future. And they did not ask the appellee to give up any right on its part. The letter was a simple notification of an intention to take some action which they felt would end any controversy between the parties. Why they did not take this action is not material in our view of the matter. It may have been because the appellee, in its reply, giving an assent which was not asked for, coupled it with an understanding that the appellants were by writing the letter of December 11th giving up their claims over the

218

land of appellee. But whether this was the reason or not, all that we have as a result of the interchange of the letters and the subsequent action of the appellants, is that the latter notified the appellee of something they were going to do, and then did not do it. No assent, as we have stated, was asked. There was no consideration given or required for the statement of their intentions, and the letter cannot be made the basis for an acceptance which would constitute a binding contract.

The appellants also contend that by reason of some of the statements in the reply of December 14th, the minds of the parties did not meet in any event. In our view of the matter it is not necessary for us to consider this contention, because, as we have stated, we do not consider that the letter of December 11th was in any sense an offer. Since there was no offer there could be no acceptance, either absolute or conditional, and there was no contract. As no contract existed between the parties there can be no decree for specific performance, and the bill will have to be dismissed.

*Order reversed and bill dismissed with costs to the appellants.*