DALTON *v.* REAL ESTATE AND IMPROVEMENT COMPANY OF BALTIMORE CITY

[No. 23, October Term, 1952.]

36

*Decided November 14, 1952.*

*Motion for remand and modification of opinion filed December 9, 1952.*

*Opinion modified as to costs and motion for remand denied December 12, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Walter H. Buck* and *Eben F. Perkins* for the appellant.

*John S. Stanley* and *D. Heyward Hamilton, Jr.,* with whom were *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal culminates, and we hope terminates, many years of controversy over the use of two dirt roads crossing contiguous tracts of land owned respectively by the appellant and the appellee, near Pennington Avenue and Curtis Creek, partly in Baltimore City and partly in Anne Arundel County.

In 1944, the dispute was the subject of negotiation between the attorneys for the parties. Settlement was reached tentatively but was not consummated. Appellee, claiming that the seeming settlement added up to an enforcible contract, filed suit to enforce its performance by the appellant, and prevailed in the Circuit Court for Anne Arundel County. This Court reversed in *Dalton v. The Real Estate and Improvement Co.,* 189 Md. 210, 55 A. 2d 789, on the ground that there had never been an offer and, therefore, of course, no acceptance and no contract.

After that decision, the parties again attempted agreement and again failed. The appellee, in May 1950, filed its bill of complaint in Circuit Court No. 2 of Baltimore City, alleging that it owned and possessed its tract of land "free and clear of any adverse claim, by deed, by prescription or otherwise" of the defendant [appellant, here] to use the same as a means of ingress and egress

to and from said tract of land owned by the defendant, and asking that its rights so claimed "be adjudicated and declared" by the court under the provisions of the Uniform Declaratory Judgments Act—Article 31A of the Code (1951 Ed.) and particularly Sections 1 and 6.

In addition to the prayers of the bill seeking the declaratory decree was a prayer for other and further relief. Mrs. Dalton, the appellant here, filed a combined demurrer and answer, the demurrer asserting that there is no ground for relief in equity and no cause of action warranting the issuance of a declaratory decree. The demurrer was overruled—we think properly—and the case heard on the merits. From a decree that Mrs. Dalton had no right in law or in equity "by deed or prescription, to enter upon or use in any way either of the roads hereinafter referred to" she appeals.

The properties involved once were part of a grant of 137 acres to the Stansbury family from the Lord Proprietor of Maryland. Susanna Watson, whose mother in law was a Stansbury, acquired the property and by her will left it to her husband, George Watson, for life with remainders in fee to their three daughters, Katherine, Sarah and Frances. All four lived in the family home on the property, where Mr. Watson died in 1909. On August 18th of that year, after his death the three daughters executed and recorded a partition deed with a plat and survey attached. Katherine (later Mrs. Hillwood) got some 50 acres, Sarah (later Mrs. Coursey) was allotted some 37 acres, and Frances (who became Mrs. Dalton in 1912) received some 49 acres. Katherine Hillwood's tract is not involved. Mrs. Coursey's 37 acres was conveyed in trust by her and her husband, Dr. Coursey, to the Mercantile Trust Company and Samuel K. Smith, Trustees, in 1918. The Trustees in 1930 conveyed the land to the Title Holding Company. Then in 1931, the Title Holding Company, who had received the land as agent for the appellee, conveyed it to the appellee. Of the 37 acres but 12, more or less, are directly involved in this appeal—so much of appellee's land is

bounded on the North and Northeast by Pennington Avenue, on the West and Southwest by the waters of Curtis Creek, and on the South and Southeast, is contiguous to the Tract of land which had been received in the partition by Mrs. Dalton and which she still owns.

Beginning on the South side of Pennington Avenue about 250 feet East of the Pennington Avenue Bridge over Curtis Creek, there begins a dirt road, the subject of dispute in this case, called by the parties and herein referred to as the "Creek Road". It runs Southeastwardly from Pennington Avenue, generally parallel to the East shore of Curtis Creek, across the land of the appellee, crosses the boundary line between the land of the appellee and the land of the appellant about 80 feet East of Curtis Creek and then continues on the land of the appellant in a Southeasterly course and then in an Easterly course, always generally parallel to the Eastern shore of Curtis Creek, until it ends close to a so-called ravine or estuary. Further East on Pennington Avenue, another dirt road, called in this case the "Farm Road" runs South from the South side of Pennington Avenue in a Southeasterly direction across the land of the appellee to a point in the boundary line between its land and the appellant's land, adjacent to a gate in a wooden fence. From there it goes past the ruins of the old Watson family home to the so-called Dalton Farm property on which the old Watson barn stands.

The bill of complaint alleged that the right to use the Creek Road was claimed by Mrs. Dalton by virtue of the deed of partition and by prescription. It is alleged as to the Farm Road that the claim is by prescription. Mrs. Dalton's answer claims the right to use both the Creek Road and the Farm Road, but does not state the specific basis of the claim, and in the trial of the case, and in the Briefs and at the argument here, prescription was relied on as to both roads.

In order to establish an easement by prescription, there must be adverse, exclusive and uninterrupted use

for at least twenty years. To be adverse, the use must be without license or permission. The burden of proof is on the claimant of the use to show that it has had the character and is of the duration required by the law. *Cox v. Forrest,* 60 Md. 74, 79; *Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795; *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 65 A. 2d 580. We find that the proof as to the Farm Road does not meet these tests. There is flat testimony, presented by the appellee, that prior to 1930, the Farm Road was not used at all. The affirmative testimony to the contrary, largely that of Mr. Dalton, husband of the appellant, was that in 1917 he and his wife had transformed a corn crib near the old Watson barn into a cottage and had used it as a residence until 1928. However, Mr. Dalton's testimony disclosed that he had been in the armed service during the First World War and that, during his absence, Mrs. Dalton had not lived there. After the war they had bought a farm in upper Baltimore County where they actually lived most of the time, although they claimed the cottage as a legal or voting residence. The testimony is not satisfactory as to uninterrupted or continuous use of the Farm Road prior to 1928. From then on, according to Mr. Dalton, the cottage was rented to various tenants. In 1945, seventeen years from the beginning of the proven continuous use of the road, (if we assume such use so proven at all) the appellee planted railroad ties, standing upright, at the gate in the road very close to the boundary on its property and very close to the boundary between it and the Dalton property. These ties prevented the passage of vehicles although persons and animals could manage to squeeze through. It is our finding that this barring of the road prevented that uninterrupted use which is necessary to establish the prescriptive right.

As to the Creek Road, a different state of facts is shown. It had been used from early days, perhaps Civil War times. The appellant produced in evidence United States Coast and Geodetic Survey maps of 1865 and

1897 on both of which is shown a road claimed by the appellant to be the Creek Road and which is in approximately its present location. The appellees deny the accuracy and relevancy of these maps. In any event, the road was used as early as the time when water travel to the farm was customary. In those days, the Creek Road crossed Pennington Avenue, not then so called, and extended North to a wharf on the shore of Curtis Creek. There was testimony that travelers alighted from boats at the wharf and traveled the Creek Road to the Dalton property. The road which roughly follows the shoreline of Curtis Creek, both before and after 1909 and indeed at the present time, goes to summer cottages or shores owned before 1909 by the Watsons and since by Mrs. Coursey and the appellee as to some and by Mrs. Dalton as to others. Generally they are one-story structures although one at least is a two-story house. All of the tenants, both before and after 1909, as well as the Daltons, for the collection of rents and other purposes, used the Creek Road continuously as a means of access to Pennington Avenue and from it to the shores. The Creek Road actually served as the shore boundary of the lots on which stood the cottages, the Creek being the water boundary. The shores were built of materials transported to the site over the Creek Road. In 1909 four such cottages were on the Dalton property and since that time several additional ones have been built, the road being extended to the East as each was constructed. Mr. Dalton's father, it is said, told him that one of the cottages, one of the larger ones, had been on Creek Road since Civil War days. One of the tenants says that he helped his father build the shore used by them before 1909. There is little, if any, dispute that Creek Road was used before and after 1909 in the same manner and generally to the same extent. There have been changes in the road since it first was established, largely in that, at the Pennington Avenue end, instead of one intersection with that Avenue, there is now a "Y" one branch of which leads to a store,

and at the other end, the road has been extended, as has been said, when additional cottages were built. On the Pennington Avenue end of the road, formerly belonging to the Courseys and now to the appellee, the road was paved with oyster shells, and on the Dalton end was a natural hard sandy road. A vehicle could turn around in it, and two vehicles could pass on it. The appellant on several occasions, caused that part of the road which was on the Coursey tract to be repaired. Two of these occasions, at least, were before 1930. The Creek Road shows on several other plats introduced in the case. One is the official map of the Maryland Geological Survey prepared, under the direction of William Bullitt Clark, State Geologist, between 1912 and 1917. This map shows the property now owned by the appellee, and that of Mrs. Dalton, including the cottages on the property of each. No road is shown on the Dalton property giving outlet to Pennington Avenue except Creek Road. The road also shows on a plat prepared by the Chief Engineer of the Baltimore and Ohio Railroad, the parent company of the appellee; this plat shows the cottages and the Creek Road and no other road from the Dalton property to Pennington Avenue, as does the United States Coast and Geodetic Survey map of 1942 corrected to 1948.

We find that the evidence as to the Creek Road shows exclusive and uninterrupted use for twenty years. This being so, it will be presumed that the use has been adverse under a claim of right, unless it is proven that the use originated by permission and there has been no change since; the burden of showing that the use was by license or permission inconsistent with the claim of right is upon the owner of the land across which the way runs. *Cox v. Forrest, supra; Wilson v. Waters,* 192 Md. 221, 64 A. 2d 135.

The appellee attempts to meet this burden by saying that each of the three sisters who owned the property as tenants in common used Creek Road freely by permission of the others. The appellee says in its brief

that "There is no evidence that prior to the time of the partition in 1909, the use of the road by any one of the sisters was adverse to the rights of the other two, and all of the evidence is to the contrary.  After the partition in 1909 the use by the three members of the Watson family continued just as it had before.  Such use was, therefore, permissive in its inception by common consent of the Watson family, and continued as such certainly until the title to Mrs. Coursey's tract was conveyed to the Title Holding Company on December 12, 1930".  Appelle reasons that since on its premise, the original use was permissive, there is a presumption that it so continues in the absence of affirmative evidence of assertion of the right to stop it or a repudiation by the user of the other land owner's right to stop it.  As we see it, appellee's premise is unsound. There can be no permission as a matter of law between co-tenants as to the use of any part of the common property.  As was said in *Susquehanna Co. v. St. Clair,* 113 Md. 667, at page 671, 77 A. 1119, at page 1121:

"* * * The great incident of all co-tenancies whether joint or in common is the unity of possession by which the tenants hold.  Each is eneitled equally with all the others, to the entire possession of the whole property and of any part of it and no one has the exclusive right to the whole or to any particular part, and no one will be permitted to deal with the property to the prejudice in any way of his co-tenants."

Before the partition, the use of each of the sisters of any part of the property was of right, and if, as the appellee says, the use continued after the partition "just as it had before", the use after the partition would have been of right.

In support of its position, the appellee asserts that use of a right of way will be deemed permissive where the use is by members of a family holding contiguous tracts. This is analogous to the argument which was made in *Lichtenberg v. Sachs,* 200 Md. 145, 88 A. 2d 450.  There,

the contention was that, as part of the road involved was used, and for some years had been used, by the defendants and their predecessors in title, as well as by the plaintiff and the plaintiff's predecessors, this mutual use and claimed mutual accomodation was a negation of the presumption that the use of the road by the plaintiff and his predecessors was adverse. Judge Markell, speaking for the Court, in finding the use adverse, held that, in such circumstances, whether the user is permissive or adverse would be properly determined by reference to all of the circumstances of the case and more particularly the character and location of the way or place of passage.

Most of the cases cited by the appellee on the point that use of a family road will be presumed to be permissive are decided on the point that the facts in the particular case control, and that the relationship of the parties and the mutuality of user are but facts to be considered with other facts. *Tiffany* in *Real Property*, 3rd Ed., Sec. 1196(a) takes the same view as did this Court in *Lichtenberg v. Sachs, supra*. Examples of the cases upon which the appellee relies which ultimately determine the question on all the facts include *Bennett v. Biddle*, 150 Pa. 420, 24 A. 738, in which the jury was properly instructed that the relationship of the parties should be considered in determining whether the inception of the use was permissive or adverse, (the jury found it to be adverse) and *Burnham v. Burnham*, 130 Me. 409, 156 A. 823, where the court held that a father's failure either to protest against a son's use of a right of way, or to show clearly his consent, was evidence of acquiescence in the adverse use and not of permission, saying further that the relationship of the parties might be considered as a factor, but was not conclusive as to whether the use was permissive or adverse.

In *Taylor v. Dennehy*, 136 Conn. 398, 71 A. 2d 596, the court found as a fact from the testimony that there

had been an intention to afford a mutual and neighborly accomodation and that, therefore, the use involved was permissive. *Tiffany* in *Real Property*, Vol. 3, Section 1196(a), *supra*, criticizes the holding of the decisions (of which *Alstad v. Boyer*, 228 Minn. 307, 37 N. W. 2d 372, is an example) that if adjoining proprietors establish a way for their mutual accomodation on the division line between the two properties and each uses a part of the way on the other's land, as well as that of his own, the user is presumed to be adverse but this court has adopted that same view in the fact of argument that logic points to the result of mutual accommodation, indicating original permissive use. *Clark v. Henckel* (Md.) 26 A 1039, and *Dowling v. Hennings*, 20 Md. 179.

Even as a co-tenant has the right as owner to the use of all or any part of the common property, the individual owner of property does not have an easement in his own land since the bundle of rights which adds up to ownership includes the right corresponding to the easement. *Oliver v. Hook*, 47 Md. 301, and *Mitchell v. Seipel*, 53 Md. 251. Nevertheless, when the owner of property has used one part for the benefit of another in such manner that there would arise a presumption that an easement existed if the two parts had been held by different owners, then, upon conveyance of the part so used, there is a *quasi*-easement which will be granted by implication as an easement to the purchaser of the other or dominant part, provided the use has been such that the easement would be classed as continuous and apparent, and necessary to the reasonable enjoyment of the property conveyed. *Eliason v. Grove*, 85 Md. 215, 36 A. 844, *Burns v. Gallagher*, 62 Md. 462. Continuous and apparent easements in the early law did not include ways. However, the doctrine of *quasi*-easements has been extended to include established ways where they are reasonably necessary to the enjoyment of the property conveyed, and this Court has so held. See *Dineen v. The Corporation*, 114 Md. 589, 79 A. 1021; *McConihe v. Edmonston*, 157 Md. 1, 145 A. 215; *Tiffany, "Real*

*Property"*, 3rd Ed., Chapter 14, Sections 780 and 785; 4 Md. Law Review 88.

If the Court finds the way not sufficiently "apparent" or not necessary to the "reasonable enjoyment" of the land granted, a grant will not be implied. *Duvall v. Ridout*, 124 Md. 193, 92 A. 209, L. R. A. 1915C, 345.

A distinction has been maintained in the law between implied grants and implied reservations. If an easement is continuous and apparent and necessary to the reasonable enjoyment of the premises granted, it will be implied that the grant included the easement. However, if a grantor intends to reserve any rights or uses in or over the tenement granted, he must reserve them expressly, and the only exception is of easements, including ways, of actual, strict necessity. The reason for the last rule is said to be that a grantor cannot derogate from his grant. There is a discussion of the two rules and examples of their application in *Slear v. Jankiewicz*, 189 Md. 18, 54 A. 2d 137. See also *Mitchell v. Seipel, supra.*

If, however, there is a simultaneous conveyance by the common owner of both the serviently and dominantly used parts of land, the more liberal implied grant rule applies and not the more strict implied reservation test. A partition is held to be a simultaneous conveyance.

*Jones* on *Easements* (1898 Ed.) puts it in this fashion at page 115:

"Sec. 139 * * * The legal effect, however, of simultaneous conveyances of parts of an estate is to pass to each grantee all those apparent and continuous easements which are necessary to the enjoyment of the granted premises. There is a grant and no implied reservation, so that all such cases are brought within the rule considered in the first division of this chapter.

"Sec. 140. A partition of real estate carries with it by implication any continuous ease-

ment reasonably necessary for the enjoyment of each part, which had been plainly and obviously enjoyed before partition. Such an easement is appurtenant to the parcels into which the land is severed by the partition. A partition is a simultaneous conveyance."

In accord are *Washburn* on *Easements and Servitudes* (Fourth Ed.) pages 102-103 (Section 42); *Baker v. Rice,* 56 Ohio 463, 47 N. E. 653; *Kaiser v. Somers,* 80 Ind. App. 89, 138 N. E. 20; *Ellis v. Bassett,* 128 Ind. 118, 27 N. E. 344; *Cassidy v. Cassidy,* 309 Ill. 465, 141 N. E. 149; *Jones v. Bethel,* 20 Ohio App. 442, 152 N. E. 734; *Huttemeier v. Albro,* 18 N. Y. 48; *Johnson v. Gould,* 60 W. Va. 84, 53 S. E. 798; *Goodall v. Godfrey,* 53 Vt. 219; *Muir v. Cox,* 110 Ky. 560, 62 S. W. 723; *O'Daniel v. Baxter,* 112 Ky. 334, 65 S. W. 805, 26 L. R. A., N. S., 341, 34 A. L. R. 233, 100 A. L. R. 1321, 164 A. L. R. 1001.

The Maryland cases are in accord with the prevailing rule. There is an analysis in *Mitchell v. Siepel, supra,* at pages 269-270 of 53 Md. In *Kilgour v. Ashcom,* 5 H. & J. 82, it was held that the children among whom the property was divided "took their respective proportions of their father's estate in the same condition, and subject to the same advantages and disadvantages under which he held it". The Court assumed, as have other cases on the subject, that in the partition there was taken into consideration the advantages and disadvantages pertinent to the respective parts of the property divided. See also *McTavish v. Carroll,* 7 Md. 352, and *Slear v. Jankiewicz, supra.*

Neither the appellant nor the appellee has in brief or oral argument discussed or relied on the point of implied grant in the simultaneous sale situation which includes partition. We find it unnecessary to decide whether the easement in Creek Road comes within the category found to pass by implication in *Dineen v. The Corporation, Etc., supra;* and *McConihe v. Edmonston, supra,* or whether it is in the group of which *Oliver v. Hook* and *Duvall v. Ridout, supra,* are examples. *Tiffany,*

in the work cited, says in Section 780 that in the case of implied grant of an easement, "The easement is regarded as existing on the theory that the grantor and grantee of the land intend that it shall exist, and the courts merely declare in effect that the particular circumstances of the transaction raise a presumption of such an intention."

In *Knight v. Mitchell,* 154 Md. 102, 140 A. 74, 75, 56 A. L. R. 1135, Judge Bond said this:

> "Implication of a grant * * * arises from the intention and expectation of the grantor and grantee of that portion, to be presumed from its apparent dependence on the other; or, stating the principle in another way, after the severance the grantor is estopped to deny to the severed portion the uses and advantages of the remaining portion * * *."

He said further:

> "The implication being one of apparent expectation and intention, many facts may bear on it, tending to support it or rebut it."

Since the parties have not relied on rights accruing by implied grant or reservation, and since the plat and survey accompanying the deed of partition did not show Creek Road, we will assume, without deciding, that no easement arose or was recognized by the partition deed. The result of this assumption of the correctness of the position taken by the appellant and appellee is significant. There cannot be an easement by prescription in a use as to which there has been a grant, express or implied. The two are mutually exclusive. A grant is a formalized, irrevocable permission or license. Prescription has its birth and fruition in use without permission. *Tiffany,* work cited, Section 1201.

The use of Creek Road by Mrs. Dalton when she was a co-tenant was as of right. If, as we assume, there was no intention of the sisters to convey a right to the road by their deed, then after it the use by Mrs. Dalton must have been adverse because there is nothing in the

case to show or suggest that she was ever given permission by Mrs. Coursey or the appellee, and nothing indicating that until well after the prescriptive period had run, any denial of a right to use the road was made to Mrs. Dalton by anyone. Mere failure to protest is not permission but acquiescence. *Tiffany,* work cited, Section 1196. In *Alstad v. Boyer,* the Minnesota case cited above, the Court expressed it as follows [228 Minn. 307, 37 N. W. 2d 376]:

> "*Acquiescence* is the inactive status of quiescence or unqualified submission to the hostile claim of another, and is not to be confused with *permission,* which denotes a grant of permission in fact or a license."

See also *Burnham v. Burnham* (Maine), *supra.*

There is no evidence that Mrs. Dalton has even given or evidenced recognition that her sister or the appellee had a right to put an end to the use of Creek Road.

Under the circumstances there is nothing to rebut the usual presumption that the open, uninterrupted and exclusive use of Creek Road since 1909 by Mrs. Dalton was adverse. Since the appellee has not met its burden of showing that it was otherwise, we find that the appellant has the prescriptive right to use that part of Creek Road on the land of the appellee. The appellee in its bill of complaint and in its argument asserts that if the appellant has a prescriptive right over its land, it, in turn, has a similar right over that portion of the Creek Road lying on her land. We find no evidence in the case to support this contention. The witnesses agree that there was no use of the Dalton portion of the Creek Road by others than the Daltons or their tenants except perhaps when the children of the sisters would play back and forth, or casual visiting by members of the family or Coursey tenants.

The contention of the appellant that the case should have been disposed of in its favor on its demurrer must be rejected. From the facts of the case which we have recited, it is evident that if the appellee was entitled to

the enjoyment of its property free from claim by the appellant, that there has been over the years and still is more than a fugitive and temporary trespass, but rather a continuing trespass which would impair the quiet enjoyment of the property to which the appellee would be entitled. In addition, it is clear that there is no substantial dispute as to facts or title. The rule of *Potomac Edison Co. v. Routzahn, supra,* holding that equity has jurisdiction in such instances, is applicable here. See also *Campbell v. Bishields,* 197 Md. 572, 80 A. 2d 262, and *Lichtenberg v. Sachs, supra.* Since equity has jurisdiction, it would have been proper for the court, under the prayer for other and further relief, to grant appropriate relief, which would have been the equivalent of its declaratory decree. Declaratory relief has been used in an analagous situation, although its employment was not there challenged. *Macht v. Hecht Co.,* 191 Md. 98, 59 A. 2d 754.

For the reasons given, the decree below will be affirmed as to the Farm Road, reversed as to the Creek Road, and the case remanded for entry of a decree in accordance herewith.

> *Decree reversed in part and affirmed in part, with costs to be paid by appellee.*